MAX LOEWINTHAN, Respondent, *v.* ARTHUR I. LE VINE, Appellant.

First Department, March 8, 1946.

*Joseph M. Proskauer* of counsel (*Eugene Eisenmann* with him on the brief; *David J. Rosen,* attorney), for appellant.

*I. Russell Stein* of counsel (*Bondy & Schloss* and *Irving Anolik* with him on the brief; *Jacob M. Rosenfeld,* attorney), for respondent.

TOWNLEY, J. The plaintiff brought this action against the Beth David Hospital and its trustees and officials alleging breach of contract, wrongful suspension, libel and slander on the part of the defendants and stating that plaintiff had been wrongfully suspended on a false accusation of charging a charity patient. The case was tried and the court dismissed on the merits all causes of action except those for slander. The jury brought in a verdict against the defendant-appellant and one other defendant not involved in this appeal in the sum of $2,500 each on the slander count. The court set aside that verdict as contrary to the weight of the evidence and excessive, and ordered a new trial. Plaintiff appealed from all parts of the judgment. This court affirmed the action of the trial court. (*Loewinthan* v. *Beth David Hospital,* 263 App. Div. 982.) An appeal was taken to the Court of Appeals with respect to the dismissal at the close of

the plaintiff's case of the causes of action for slander against the superintendent and executive director of the hospital. The Court of Appeals ordered a new trial saying that the statements were qualifiedly privileged, but that as to those two respondents, there was sufficient evidence on the question of malice to raise a jury question. (*Loewinthan* v. *Beth David Hospital*, 290 N. Y. 188.)

No appeal was taken to the Court of Appeals with respect to the action against the defendant Le Vine. The action against him was severed and on the retrial the jury brought in a verdict for the plaintiff for $17,500. The defendant now appeals on the ground that the verdict is against the weight of the evidence and that there is no evidence of malice to support the finding of the jury.

The facts arise out of an operation performed in May, 1935, on one Sol Socher who was an auditor in the employ of the first vice-president of the hospital. Socher was a patient in a private room at Beth David Hospital. The plaintiff, who was a member of the staff of the hospital and who was not allowed to charge a charity patient, rendered Socher a bill for $50. When the charge was not paid, he brought an action in the Municipal Court. The case was set for trial on the morning of September 24, 1935, and Ascher, the superintendent of the hospital, was subpœnaed as a witness. Ascher asked the plaintiff to withdraw the suit. The plaintiff refused and Ascher suspended him on the ground that, in violation of the rules of the hospital, he had charged a charity patient for services.

On September 25, 1935, at a meeting of the board of trustees at which the defendant presided, the superintendent appeared and notified the board of the suspension of the plaintiff. After hearing the superintendent, the board of trustees confirmed the suspension pending a hearing by a special committee. Nine members of the board of trustees attended this meeting and their action was unanimous. In accordance with the resolution of the board, the defendant wrote the plaintiff telling him of the action of the trustees. This letter is dated September 25th, that is to say, the date of the meeting itself, and plaintiff's reply in which he asked for a hearing is dated the same day. This gives rise to a question whether the defendant's letter was not written in advance of the trustees' action and therefore shows an intention to suspend him regardless of the evidence. The point has to do with the question of malice to be discussed later.

On October 8, 1935, a meeting of the board of trustees was held at which a committee of four trustees was appointed to hear a

report on plaintiff's conduct. The defendant was not a member of the committee. The plaintiff was informed of the appointment of the committee and on October 10th plaintiff appeared before the said committee and gave his version of the story, while the hospital superintendent also appeared and gave his. On October 15th, the board of trustees met and received the report of this special committee. The defendant presided. He had taken no part in the proceedings of the special committee and had no connection with it prior to the meeting of October 15th. The special committee reported that the plaintiff should stay suspended until the end of the year. This action was then approved by the board. All this is preliminary to an understanding of the slander complained of which is the basis of the verdict herein.

Plaintiff at the time he was notified of his suspension wrote a letter of complaint to each of the trustees and demanded a hearing. This is the letter concerning which there is confusion as to whether it was written on the 25th or 26th of September. One of the trustees, Kobrinitz, now deceased, had not attended the meeting on September 25th but had received one of these letters. On October 8th he met the defendant at the hospital and asked the reason for plaintiff's suspension. At that time Kobrinitz was accompanied by his son and the son testified as to what was said since Kobrinitz himself had meanwhile died. The son, incidentally, is related by marriage to plaintiff's attorney. In answer to the inquiry, it is claimed that the defendant said: " Dr. Loewinthan was suspended, was going to be suspended, or suspended for charging a charity patient." In further elaboration the record shows the following: " Q. Tell us what you heard Mr. LeVine say to your father on that occasion. A. He said to him, ' We are having a meeting tonight. They are going to suspend the doctor.' And he asked him what for, and he said that he charged a charity patient. Q. Now, there is no question about it that that was the conversation between your father and Mr. LeVine? A. That is right. Q. And, in your presence and in your hearing? A. Yes, sir." This is the first publication of slander relied on.

The other publication relied on was testified to by plaintiff's sisters. They said that at a meeting of the Ladies' League of the Beth David Hospital, attended by some twenty members; Mrs. Fine, one of the important members of the league, inquired of the defendant: " Is there any trouble? We don't see Mrs. Loewinthan at the meetings and we haven't seen Dr. Loewinthan around." One sister testified that the defendant in answer to

this inquiry said: " We suspended Dr. Loewinthan because he took money from a charity patient." The other sister testified to substantially the same conversation.

The defendant denied that he was present at this meeting and this was confirmed to some extent by the testimony of others attending the meeting. The minutes also did not record the defendant as present.

Assuming as we must, in view of the finding of the jury, that the defendant uttered both of these statements, and assuming that they constituted a slander, they were nonetheless statements made at a time when defendant was privileged to make the statements. The privilege is not absolute but is qualified, which means that though the statements may be false, the defendant was privileged to make them provided he did not make them with express malice.

This privilege attaches when the statement is made by a defendant who has an interest or a duty in connection with the matter involved in the inquiry. The Court of Appeals has specifically held in this case that in respect to a similar slander the qualified privilege rule is properly invoked. (*Loewinthan* v. *Beth David Hospital*, 290 N. Y. 190, *supra*.) We think that the defendant is protected by the rule under the circumstances of both of the slanders charged and that the only question in this case is whether there is any evidence to support a finding of express malice on the defendant's part.

As was said in *Hemmens* v. *Nelson* (138 N. Y. 517, 524) in discussing the nature of the malice required to overcome a qualified privilege: " The question is not whether the charge is true or false, nor whether the defendant had sufficient cause to believe that the plaintiff sent the letter, or acted hastily, or in a mistake, but the question is, the occasion being privileged, whether there is evidence for the jury that he knew or believed it to be false."

At the time these statements were made the plaintiff had instituted action against a hospital patient. The superintendent who had knowledge of the facts had reported to the board of trustees of which the defendant was a member that plaintiff had charged a charity patient and that he had suspended plaintiff; the board of trustees had confirmed the suspension pending a hearing by a special committee; the special committee had reported in favor of making the suspension permanent and the board of trustees had approved of the report of the special committee and had terminated plaintiff's connection with the hospital. With this background the statements of the defendant

are to be reasonably construed as meaning that the cause of the suspension was a belief on the part of the hospital authorities that plaintiff had charged a charity patient and not as independent statements of fact to that effect by the defendant. But if they be taken as independent statements of fact, it would seem that there was ample justification for them so far as the defendant was concerned because he was acting in reliance on the information given him by the superintendent of the institution and the approval thereof by the special committee.

The only proof offered by the plaintiff of express malice consists of two incidents. The first relates to the dating of the letters of September 25th and the argument based thereon. It will be remembered that the defendant's letter was dated September 25th. A copy of the plaintiff's reply purports to have been dated on September 25th. The meeting concededly was held on the evening of the 25th and did not adjourn until about 11:00 P.M. Thus, it is claimed that the defendant's letter, which notified the plaintiff that he had been suspended and that this suspension had been confirmed by the board of trustees, must have been written before the meeting and hence represented a prejudgment of the plaintiff's guilt. It is argued, therefore, that this prejudgment would constitute some proof of malice.

This argument is built up from the assumption that the copy of the plaintiff's reply in the record accurately states the date upon which it was sent. That this is inaccurate is indicated by the defendant's reply which referred to it as the letter of September 26th. The whole claim is highly artificial. It was not made at the time of the trial when the original letter could probably have been produced by the defendant and is not sufficiently substantial to justify a finding of malice.

The second incident relied on is described in Kobrinitz' testimony. On cross-examination he testified as above noted that the defendant had said: " We are having a meeting tonight. They are going to suspend the doctor. * * * he charged a charity patient." It is claimed that this statement also indicates prejudgment of the plaintiff and thus indicates malice This conversation is supposed to have taken place shortly before the meeting of October 8th, at which no action was taken other than the appointment of the committee to consider the charges. The doctor had already been suspended pro tem and this suspension had been confirmed by the trustees. The defendant had taken no part in the preferment of charges and had merely presided at the meetings at which nine trustees had unanimously voted to suspend the plaintiff. We cannot find that these two

incidents furnish reasonable basis for a finding that the defendant was actuated by express malice in making the two statements referred to.

On this state of the record, the court instructed the jury as follows: " If, therefore, the defendant uttered the slanderous words recklessly or carelessly, without first making a reasonable investigation to find out whether or not the plaintiff in fact charged a charity patient, then you may infer that he did not act in good faith and was actuated by malice."

We hold that this instruction is not a correct statement of the law in relation to defendant's responsibility under the circumstances. The defendant was not under an obligation to make an investigation and the failure to make such an investigation is not the equivalent of malice. In *Pecue* v. *West* (233 N. Y. 316, 322) the court said: " Malice, however, does not mean alone personal ill-will. It may also mean such a wanton and reckless disregard of the rights of another as is ill-will's equivalent. This means more than mere negligence or want of sound judgment. (*Hesketh* v. *Brindle,* 4 Times L. R. 199.) It means more than hasty or mistaken action. (*Hemmens* v. *Nelson,* 138 N. Y. 517.) If the defendant made the statements in good faith, believing them to be true, he will be protected, even if a man of wider reasoning powers or greater skill in sifting evidence would have hesitated. (*Clark* v. *Molyneux,* 3 Q. B. Div. 237.) So if he fairly and in good faith relies on hearsay (*Lister* v. *Perryman,* L. R. 4 H. L. 538), which often may reasonably induce action or belief."

The finding of such malice implied in the verdict of the jury is against the overwhelming weight of the evidence and must be set aside. The verdict was also grossly excessive. The verdict on a prior trial of $2,500 had been set aside as excessive and such action was approved by this court. (*Loewinthan* v. *Beth David Hospital,* 263 App. Div. 982, *supra.*) There is nothing in the present record to justify a verdict in any such sum as was found by the jury.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Martin, P. J., Glennon, Callahan and Peck, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the result of the final judgment in the action.