MAX LOEWINTHAN, Appellant, v. ARTHUR I. LE VINE, Respondent.

Argued May 16, 1949; decided July 19, 1949.

*Eugene L. Bondy, David E. Nierenberg* and *Jacob M. Rosenfeld* for appellant. I. The Justice at Trial Term was without jurisdiction to direct a verdict for defendant after the jury had been discharged, notwithstanding its verdict for plaintiff. (N. Y. Const., art. I, § 2; Civ. Prac. Act, § 457-a; *Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241; *Matter of Whipple*, 294 N. Y. 292; *Pockrass* v. *Kaplan*, 163 App. Div. 209; *Bank of United States* v. *Manheim*, 264 N. Y. 45; *Sadowski* v. *Long Island R. R. Co.*, 292 N. Y. 448; *McDonald* v. *Metropolitan St. Ry. Co.*, 167 N. Y. 66; *Callery* v. *Lyons*, 292 N. Y. 15.) II. It was fundamental error for the court to charge that there was a qualified privilege in the publication of the slanders and that plaintiff must establish malice in order to succeed. (*Taylor* v. *Church*, 8 N. Y. 452; *Hamilton* v. *Eno*, 81 N. Y. 116; *Sunderlin* v. *Bradstreet*, 46 N. Y. 188; *Ormsby* v. *Douglass*, 37 N. Y. 477; *Lewis* v. *Chapman*, 16 N. Y. 369; *Gangi* v. *Fradus*, 227 N. Y. 452; *Pangburn* v. *Buick Motor Co.*, 211 N. Y. 228.)

*Alfred McCormack, Albert Rosenblum* and *David J. Rosen* for respondent. I. The trial court properly directed a verdict for defendant on the ground that plaintiff's testimony on the issue of malice was incredible as a matter of law. (Civ. Prac. Act, § 457-a; *Richardson* v. *City of Boston*, 19 How. [U. S.] 263; *Toomey* v. *London Ry. Co.*, 140 Eng. Reprints 694; *Improvement Co.* v. *Munson*, 14 Wall. [U. S.] 442; *Baulee* v. *New York & Harlem R. R. Co.*, 59 N. Y. 356; *Linkhauf* v. *Lombard*, 137 N. Y. 417; *Dwight* v. *Germania Life Ins. Co.*, 103 N. Y. 341; *Hemmens* v. *Nelson*, 138 N. Y. 517; *McDonald* v. *Metropolitan St. Ry. Co.*, 167 N. Y. 66; *Matter of Case*, 214 N. Y. 199; *Getty* v. *Williams Silver Co.*, 221 N. Y. 34; *Bank of United States* v. *Manheim*, 264 N. Y. 45; *Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241; *Cruz* v. *City of New York*, 179 Misc. 1031.) II. Defendant's remarks were qualifiedly privileged, and the privilege was not destroyed by the fortuitous presence of a third person when the remarks were uttered. (*Byan* v. *Collins*, 111 N. Y. 143; *White* v. *Nicholls*, 3 How. [U. S.] 266; *Lewis* v. *Chapman*, 16 N. Y. 369; *Sunderlin* v. *Bradstreet*, 46 N. Y. 188; *Hamilton* v. *Eno*, 81 N. Y. 116; *Ashcroft* v. *Hammond*, 197 N. Y. 488; *McCarty* v. *Lambley*, 20 App. Div. 264; *Ratzel* v. *New York News Pub. Co.*, 67 App. Div. 598.)

LOUGHRAN, Ch. J. The action is for slander. The issue has been tried three times. On the first trial, the Trial Judge set aside a verdict for the plaintiff as contrary to the weight of the evidence and as excessive, and the Appellate Division affirmed that order. (263 App. Div. 982.) On the second trial, the plaintiff again had a verdict, but the Appellate Division reversed the judgment on the grounds that the verdict was against the weight of the evidence and was excessive. (270 App. Div. 512.) On the third trial, the jury again found for the plaintiff and again the verdict was set aside; but this time a new trial was not ordered; on the contrary, the jury, at the command of the Trial Judge, returned a verdict for the defendant upon which judgment was entered dismissing the complaint on the merits. The Appellate Division affirmed. Whether that ruling was right is the question for decision.

In October, 1935, the plaintiff, a physician and surgeon, was dismissed from his position on the staff of Beth David Hospital in the city of New York and shortly thereafter the defendant, as the then president of the hospital, twice undertook to account for that occurrence by saying: " Dr. Loewinthan charged a charity patient and we suspended him." These defamatory statements were not actionable without proof of malice, because the defendant and his auditors had a common interest in the subject matter of his communications. In other words, he had the protection of a qualified privilege and he was not liable unless he spoke from an improper motive. (See *Loewinthan* v. *Beth David Hosp.*, 290 N. Y. 188, 190; *Bingham* v. *Gaynor*, 203 N. Y. 27, 31; *Pecue* v. *West*, 233 N. Y. 316.) The law was here stated to that effect by the trial court in its charge to the jury.

As a basis for a finding of such actual or express malice, the plaintiff here presented evidence (not offered on the former trials) which tended to establish the three following incidents. (1) On an occasion in the autumn of 1933, after the defendant had urged the Junior Medical Board to purchase tickets for the annual dinner of the hospital, the plaintiff took the floor and expressed his desire to have the board of directors " carry the financial end of the hospital and let the doctors take care of the poor sick " — a commentary that led the defendant to say to the plaintiff, " You will regret your speech of this evening." (2) In September, 1935, the plaintiff by refusing to perform an

operation displeased the defendant who then said to him, "You are too fresh and I will show you who is boss of the hospital." (3) In October, 1935, the person who had accused the plaintiff of collecting money from a charity patient was said by the defendant to be more important to the hospital financially than the plaintiff ever would be.

The defendant flatly denied making any of the statements so attributed to him.

In respect of the above three items of evidence of malice, the Trial Judge said: "From that evidence, if it be believed by a jury or by any trier of the facts, the inference might reasonably and logically flow that in making the utterances complained of the defendant was actuated by express malice, hatred or ill will." The jury believed that evidence. Hence the reason why the Trial Judge set aside their verdict and directed a contrary verdict for the defendant is now the crucial factor in this controversy.

As to the first of the above-mentioned incidents — the words that assertedly passed between the parties at the meeting of the Junior Medical Board of the hospital — the Judge said: "Neither side, as I recall it, called any witnesses to support the testimony respectively of the plaintiff and the defendant with respect to this incident. But the fact that no use was made of it upon either of the two preceding trials by the plaintiff, although having knowledge of the incident * * * is a circumstance which must be considered by the trier of the facts in determining where the truth lies as between the plaintiff and the defendant with respect to their testimony concerning that alleged incident." (2) As to the second incident — the claimed declaration by the defendant of his intent to show the plaintiff who was boss of the hospital — the Judge said: "In determining the issue of veracity as between the two principals in this case with respect to that incident, the fact that the defendant's version or testimony is supported by the testimony of four disinterested witnesses * * * plus the hospital record, to my mind tips the scales very heavily in favor of the acceptance of the testimony of the defendant." As to the third incident — the alleged disparagement by the defendant of the plaintiff's worth to the hospital in a money sense — the Judge said: "There again we have a situation where one must choose on the issue of veracity as between the plaintiff and the defendant. From the nature

of this incident, as testified to by the plaintiff, it does not seem that either party could have called any witnesses to corroborate his testimony  *  *  *.  But again we have the circumstance that that evidence, the existence of which was known  *  *  * to plaintiff's counsel on both the first and second trials, was not availed of by either of them on those occasions.''

As a witness for the plaintiff, one of his counsel took responsibility for having withheld the evidence of malice on the former trials.  The witness said: '' I felt that the slander was per se, and because of that, and the fact that I did not feel there was any privilege, I did not want to unnecessarily encumber the record ''.  Respecting that testimony the Trial Judge said: '' The explanations that were made on the trial before me as to the failure to use that essential evidence on the first and second trials of this action are of a character that strike me very forcefully as being of such a tenuous nature that I cannot accept the testimony embodying those explanations as credible or worthy of any belief whatsoever.''

Finally the Trial Judge said this: '' Persons seized with ill will, hatred or malice toward another, which would cause them to seek to destroy the reputation of that other, are going to invent their own opportunities for the spreading of the defamation, and as a rule they make their defamatory statements with embellishments.  Those circumstances are not disclosed by anything in the plaintiff's case to have attended the making of the defamatory utterances alleged in this litigation.  *  *  * The rejection of the evidence designed to show express malice leaves the plaintiff without any right of recovery.''

In thus handling the case the Judge, we believe, did violence to the principle that the judgment upon the facts must be the judgment of the jury and not the judgment of any other tribunal. To be sure, subdivision 1 of section 457-a of our Civil Practice Act says: '' The judge may direct a verdict when he would set aside a contrary verdict as against the weight of the evidence.'' Whether a literal interpretation of that text would deprive a party of the right to the jury trial guaranteed by section 2 of article I of our State Constitution was once a question.  But it is now settled by decisions of this court that subdivision 1 of section 457-a empowers a trial court to direct a verdict only when it would be required to set aside a contrary verdict for

insufficiency of evidence (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241; see, too, the Fifteenth Annual Report of N. Y. Judicial Council, 1949, pp. 66–68, 249–251, and L. 1949, ch. 604, which will take effect Sept. 1, 1949).

In the present case, the Trial Judge did not find the plaintiff's evidence of malice to be inadequate. Indeed he said it was sufficient, if credited. The issue, as he said, was one " of veracity as between the two principals in this case ". He set aside the verdict for the plaintiff and directed a contrary verdict for the defendant merely because he did not believe the plaintiff and his witnesses. It is impossible to sustain that ruling.

The judgments should be reversed and a new trial granted, with costs in all courts to abide the event.

LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur; BROMLEY, J., taking no part.

Judgments reversed, etc.