**A. B. C. NEEDLECRAFT CO., Inc.,**
Plaintiff-Appellee,

v.

**DUN & BRADSTREET, Inc., Defendant-Appellant,**

and

**Sigmund Heftman, Defendant.**

No. 259, Docket 24324.

United States Court of Appeals
Second Circuit.

Argued March 13, 1957.

Decided June 21, 1957.

White & Case, New York City, Chester Bordeau and William D. Conwell, New York City, of counsel, for defendant-appellant.

Joseph R. Apfel, New York City, for plaintiff-appellee.

Before HINCKS, STEWART and LUMBARD, Circuit Judges.

STEWART, Circuit Judge.

This action, brought against Dun & Bradstreet, Inc., and Sigmund Heftman for their alleged libel of the plaintiff corporation, was removed to the district court by reason of diverse citizenship. There Heftman was dismissed as a party defendant, and, after a jury trial, judgment was rendered against Dun & Bradstreet, Inc., for compensatory and punitive damages. Appealing from that judgment Dun & Bradstreet, Inc., asserts that the evidence was insufficient to take the case to the jury.[1] Alternatively, it asks that the case be remanded for a new trial because of prejudicial error in the judge's charge and other errors in the conduct of the trial. For the substantive law of libel we look to New York, where the statement complained of was published. Grant v. Readers Digest Ass'n, 2 Cir., 1945, 151 F.2d 733, certiorari denied 1946, 326 U.S. 797, 66 S.Ct. 492, 90 L.Ed. 485. There is no substantial dispute about the facts.

The defendant is engaged in the business of compiling information about the credit, character, and estimated financial condition of individuals and business enterprises, which it furnishes on a confidential basis to interested subscribers. In November, 1950, one of the defendant's agents in the course of his duties visited the office of a newly formed corporation in New York City and there interviewed the corporation's president, Sigmund Heftman.

During this interview Heftman was asked about his business background and the source of his capital. He informed the defendant's agent that he had been with A. B. C. Needlecraft until November 1, 1950, "at which time," the agent understood him to say, "there was a dissolution of the partnership." According to Heftman's recollection of this conversation what he said was, "when it came up about the question of where I got my capital, I told them I was connected with the A. B. C. Needlecraft and my partners paid me out my share only."

After the interview the agent returned to the defendant's office to write his reports. Since Heftman had referred to A. B. C. Needlecraft the agent consulted a previous report in the defendant's files and discovered that A. B. C. Needlecraft was not a partnership, as he had understood, but a corporation. Interpreting what Heftman had said as meaning the corporation had gone out of business, the agent without further investigation prepared a supplemental report on A. B. C. Needlecraft Co., Inc., as follows: "It was stated on November 27, 1950, by Sigmund Heftman, that the affairs of this corporation were liquidated in full." This report was issued by the defendant on November 29, 1950, to ten of its subscribers who had previously inquired about A. B. C. Needlecraft Co., Inc. The report was untrue.[2]

---

1. Dun & Bradstreet, Inc., will be referred to as "the defendant."

2. Twelve days later upon being advised of its error the appellant issued to the same subscribers a "correction report" stating the true facts, as follows:
   "Any report to the effect that A.B.C. Needlecraft Co., Inc. has been liquidated in full is erroneous and should be disregarded.

   "The facts of the matter are that Sigmund Heftman, former Treasurer of the corporation withdrew from the corporation about November 1st, 1950 receiving certain assets in payment for his one third interest.

   "A.B.C. Needlecraft Co., Inc. has continued in business at this address under the remaining two officers without interruption."

On this appeal it is conceded that a false statement concerning a corporation which "assails its management or credit, and inflicts injury upon its business" constitutes libel under the law of New York. Reporters' Ass'n of America v. Sun Printing & Pub. Ass'n, 1906, 186 N.Y. 437, 440, 79 N.E. 710, 711, and that the report of November 29, 1950, qualifies as such a statement. The defendant argues, however, that the statement was made upon an occasion of qualified privilege, raising a presumption of good faith which it was the plaintiff's burden to overcome by proving malice, and that this burden was not sustained by proof of the facts above outlined.

■ The defendant's major premise— that the statement was qualifiedly privileged—is undoubtedly correct and was so accepted by the trial court. Ormsby v. Douglass, 1868, 37 N.Y. 477; see Moore v. Manufacturers' Nat. Bank, 1890, 123 N.Y. 420, 425, 25 N.E. 1048, 11 L.R.A. 753. But we cannot agree that the evidence was insufficient to entitle a jury to find that the privilege was destroyed under the circumstances disclosed. While there was no proof that the appellant was activated by ill will or knew that the statement was false when made, the "malice" required to destroy the privilege does not alone mean actual malice, as the appellant recognizes and as this court in two recent decisions has had occasion to point out. De Ronde v. Gaytime Shops, 2 Cir., 1957, 239 F.2d 735, 738; Stephens v. Columbia Pictures Corporation, 2 Cir., 1957, 240 F.2d 764, 767. Under the law of New York the malice necessary to destroy a qualified privilege can also consist of "such a wanton and reckless disregard of the rights of another as is ill will's equivalent." Pecue v. West, 1922, 233 N.Y. 316, 322, 135 N.E. 515, 517.

■ Whether the proof showed such constructive malice was a question of fact to be submitted to the jury. The evidence was clearly sufficient to support a finding that the defendant acted in wanton and reckless disregard of the plaintiff's rights. Heftman never used the word "liquidated" in reference to the plaintiff. With nothing more to go on than a misunderstood casual remark, with no effort to verify the facts, though to have done so would have been a simple matter, the defendant published false information of a serious and damaging nature.

■■ Although the evidence was sufficient to warrant submission of the case to the jury, the defendant is correct in its contention that the case was submitted upon prejudicially erroneous instructions as to the law. Throughout his lengthy charge the trial judge repeatedly told the jury that the defendant should be held liable if it had failed to exercise ordinary care in publishing the false report. The law of New York clearly requires more than mere negligence to destroy the privilege. "Malice * * * means more than mere negligence or want of sound judgment. * * * It means more than hasty or mistaken action." Pecue v. West, supra; Loewinthan v. Le Vine, 1st Dept., 1946, 270 App. Div. 512, 60 N.Y.S.2d 433. After he had completed his general charge, the district judge at counsel's request did make some attempt to repair the damage that had been done, but the effort was insufficient and came too late. Since in view of the erroneous charge it is impossible to know whether the jury found such a reckless and wanton disregard of the plaintiff's rights as is equivalent to malice, a new trial is necessary.

Complaint is also made that the district judge failed to observe Rule 51, Fed.R. Civ.P., 28 U.S.C.A. in ruling on requests to charge, and that the plaintiff's counsel exceeded the permissible latitude of advocacy in summation. In view of the conclusion we have reached, it is unnecessary to consider these claims of error. There is no reason to suppose that when the case is retried the procedural irregularity will be repeated or that counsel will let partisan exuberance lead to impropriety.

Reversed and remanded.