■ NATALIE D'AMICO, as Administrator of the Estate of STEPHEN D'AM-

ico, Deceased, Respondent-Appellant, v PENNSYLVANIA MILLERS MUTUAL INSURANCE COMPANY, Respondent, GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORP., LTD., Appellant.—In an action to recover damages for breach of defendants' alleged obligations under certain homeowners insurance policies issued by them, (1) defendant General Accident Fire & Life Assurance Corp. (General) appeals from an order of the Supreme Court, dated September 20, 1978 and entered in Suffolk County, which granted defendant Pennsylvania Millers Mutual Insurance Company's (Pennsylvania) motion for summary judgment dismissing the complaint against it and (2) defendant General and plaintiff separately appeal from so much of an order of the same court dated November 9, 1978, as upon granting reargument, adhered to its original determination. Appeal from order dated September 20, 1978, dismissed, without costs or disbursements. Said order was superseded by the order dated November 9, 1978. Order dated November 9, 1978 affirmed insofar as appealed from without costs or disbursements. The proof revealed that Dennis Traina moved out of his parents' residence and moved into the D'Amico home, taking most of his clothes with him. He returned to his parents' residence for visits which lasted only a few hours. There was testimony that he advised the unemployment insurance office of this change of address when he moved out. It was further established that after he moved into the D'Amico home he used that address on his driver's license. Also at the time he was separated from military service he used the same address. At the time of his discharge from the service he returned to the D'Amico residence. In light of these facts, the evidence clearly indicated an intention on the part of Dennis Traina, the insured's son, to abandon his parents' residence. Special Term was justified in concluding that he no longer fell within the definition of an "insured" under the terms of the homeowners insurance policy issued to his parents by defendant Pennsylvania. Therefore, Pennsylvania's motion for summary judgment was properly granted. Mollen, P. J., Mangano and Cohalan, JJ., concur.

Gibbons, J. concurs insofar as the appeal from the order dated September 20, 1978 was dismissed but otherwise dissents and votes to reverse the order dated November 9, 1978 insofar as appealed from and deny the motion for summary judgment, with the following memorandum, in which Titone, J. concurs: The question presented on this appeal is whether on October 8, 1974, Dennis Traina was an insured person within the meaning of section 8 of the homeowners insurance policy issued by the defendant Pennsylvania Millers Mutual Insurance Company (Pennsylvania) to his parents, Frank and Jeanette Traina, the named insureds, covering their premises located at 1459 Illinois Avenue, Bay Shore, New York. The policy states that "Insured" means, inter alia: "(1) the Named Insured stated in the Declarations of this policy; (2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured" (emphasis added). In granting Pennsylvania's motion for summary judgment Special Term concluded, solely from the motion papers before it, that Dennis Traina was not a resident of said premises and, therefore, not an insured under the policy. It held, inter alia: "the evidence in the instant case as to the intent on the part of Dennis Traina to abandon his former residence with his parents is so one-sided as to warrant, upon a trial, the direction of a verdict on that issue. It is clear from his military records and from his driver's license that he considered the D'Amico home to be his permanent residence following his departure from his parents' home in or about May, 1974. The facts that he visited his parents often and that he stayed at their home overnight on one occasion do

not constitute evidence of an intention to re-establish his residence there, see *Katz v. Siroty*, [62 AD2d 1011]". In passing upon the motion for summary judgment, Special Term equated this matter with a motion for a directed verdict pursuant to CPLR 4401, and proceeded to evaluate the quantum of evidence and conclude that it was so "one-sided" as to preclude any other finding than that he abandoned his former residence. The criteria to be applied when applying such rule is set forth in *Wessel v Krop* (30 AD2d 764, 765), in the following language: "A motion for judgment at the close of the entire case is substantially equivalent to a motion for a directed verdict made at that point. 'A final determination on the facts by a direction of verdict must rest on broader ground than weight of evidence alone. A direction may be made only when a contrary verdict would be set aside for legal insufficiency. *(Loewinthan v. Le Vine*, 299 N.Y. 372)' *(Davis v. Caristo Constr. Corp.,* 19 A D 2d 518, quoted with approval in *Matter of Lakin v. MVAIC*, 23 A D 2d 488.) 'In considering a motion to direct a verdict, the court cannot properly undertake to weigh the evidence. *Its duty is to take that view of the evidence most favorable to the nonmoving party, and from the evidence and the inferences reasonably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the moving party. The test is whether the trial court could find "that by no rational process could the trier of the facts base a finding in favor of the [party moved against] upon the evidence * * * presented." (Blum v. Fresh Grown Preserve Corp.,* 292 N.Y. 241, 245)' *(Wearever Upholstery & Furniture Corp. v. Home Ins. Co.,* 286 App. Div. 93, 95.)" (Emphasis added.) This rule is applied to a case where all of the evidence has been received and the parties have rested, which is not the case here. However, even if this rule were to be applied to the facts disclosed in the motion papers, which was the process by which Special Term made its determination, such evidence and the normal inferences flowing therefrom would, in my opinion, militate against the conclusion that by no rational process could a jury find for the plaintiff on the issue of Dennis Traina's residence on October 8, 1974. I conclude after reading the examinations before trial of Dennis Traina, Thomas Traina (Dennis' father) and Natalie D'Amico, and the attached exhibits, that whether Dennis Traina intended to permanently abandon his parents' home presents an issue of fact for resolution at a trial. The burden of proof to establish that he had intended to abandon his parents' home rests upon Pennsylvania (see *Matter of Bodfish v Gallman,* 50 AD2d 457), and such burden involves proof of his intention to accomplish such result. Although it appears from the testimony of Dennis Traina at his examination before trial (which had not been completed) that when he was about 19 years of age, after an argument with his father which concerned parental control, he left the home of his parents and stayed for about six months at the home of his fiancee's parents, James and Natalie D'Amico, at 40 Mohawk Avenue, Deer Park, New York, and that while there he used that address on his driver's license, his army records, and as the place where he received his mail and his unemployment insurance checks, such facts do not, contrary to the finding of Special Term, conclusively establish an intent on his part to permanently abandon his parents' home and to establish a new residence elsewhere. Essentially, the question of an *intention* to change one's residence involves a fact-finding process of which the above tokens of proof are but a part. To make a determination of Dennis Traina's state of mind in this regard, a fact-finder must also consider, among other things, that he left his parents' home in a state of anger and rebellion, that although he took some clothes and tools with him, he also left some behind,

that when he stayed at the D'Amico home he paid nothing, that he did not have his own room but shared a room with their two sons, that on occasion he brought food into the house for their use as well as his own, that on a previous occasion he left home after an argument with his father and returned, and that immediately after the death of Steven D'Amico, he went right home to his parents. From the foregoing a jury may conclude that his leaving was in anger and, at most, involved a temporary sojourn at the D'Amico's home rather than an intent to permanently abandon his parents' residence. In dealing with Dennis Traina's state of mind, a jury may consider the following testimony of Natalie D'Amico, as it may throw some light on whether he stayed at D'Amico's home because of his being angry with his father or because he intended to make it his residence and abandon his parents' home: "BY MR. KEEFE: [Attorney for General]: Q Did you ever have occasion to speak to Dennis regarding the subject of his possibly *returning into his home?* MR. FALLON: [Attorney for plaintiff]: You can answer yes or no to the question. A Yes. Q Was this prior to October 8, 1974? A Yes. Q Was it on one occasion or more than one? A More than one. Q Can you tell me approximately the first time that you spoke with him on that subject? A I don't know. Q On each of the occasions that you spoke to him, on that subject, was he—was what he said the same or did it vary from one time to another? A Pretty much the same. Q What did he say to you with regard to returning home? A He— MR. FALLON: I'm going to object, but I'll let her answer. A *He couldn't seem to straighten things out.* MR. CASTELLANO: [Attorney for Pennsylvania]: Could you elaborate a little better? MR. FALLON: Off the record. (Discussion off the record.) MR. CASTELLANO: I'll object because I don't understand. I don't think it's responsive to the question. Q On these occasions, did you say anything to Dennis on the subject? A *I told him I thought they should straighten out their differences and he should go home.* Q Did you express that to him more than once, that feeling on your part? A I probably did." (Emphasis added.) Apart from all other considerations it should be noted that when Dennis Traina was cross-examined at his deposition concerning his various recent places of abode, he stated that he had recently moved into a new apartment but before that he had lived at his parents' home at 1459 Illinois Avenue, Bay Shore, New York, "excluding the time that I left *for a while,* since we moved out of Brooklyn," (emphasis added) and that, at this point, the examination was terminated when a dispute as to the admissibility of this line of questions developed between the attorney for Pennsylvania and the attorney for the plaintiff. When the attorney for Pennsylvania thereafter attempted to further question Dennis Traina, the latter refused to continue and stated that he would "like to consult my attorney." Here, the main question involved in this litigation concerns the state of mind of Dennis Traina, who is a witness and not a party. This issue is one of fact which can only be determined after a searching examination and cross-examination at a trial (see *Marine Midland Trust Co. of Northern N. Y. v Macaluso,* 30 AD2d 932), and not alone on what address he used on some documents and where his mail was delivered. While so-called "formal declarations" of domicile, such as motor vehicle registration, voter registration and mailing addresses have lost their importance in recent years as courts have recognized their self-serving nature, the "informal declarations" and the acts of the person have been given greater recognition in resolving the question of domicile (see Restatement, Conflict of Laws 2d, § 20, Special Note on Evidence for Establishment of a Domicile of Choice, pp 81-83; *Matter of Bourne,* 181 Misc 238, affd 267 App Div 876, affd 293 NY 785). As was stated in *Hollander v*

*Nationwide Mut. Ins. Co.* (60 AD2d 380, 384), "it was certainly competent *for the trial court to determine* that plaintiff was not a member of her parents' household and had established a different legal residence." (Emphasis added.) Issues of fact are presented which require a trial (see *Matter of Highsmith [MVAIC],* 31 AD2d 424; *Katz v Siroty,* 62 AD2d 1011; *Hollander v Nationwide Mut. Ins. Co., supra),* and the order dated November 9, 1978 should, for that reason, be reversed insofar as appealed from and the motion for summary judgment denied.