239 F.2d 735
 Murray DE RONDE, Plaintiff-Appellee,
v.
GAYTIME SHOPS, Inc., Wrights Apparel, Inc., Defendants-Appellants, and Globe Indemnity Company, Defendant.
Murray DE RONDE, Plaintiff-Appellee,
v.
FRANKFORD-COTTMAN CORPORATION, Defendant-Appellant, and Globe Indemnity Company, Defendant.
 Nos. 70-71.
 Docket 24142-24143.
 United States Court of Appeals Second Circuit.
 Argued November 7, 1956.
 Decided December 7, 1956.
 As Amended on Denial of Rehearing January 18, 1957.
 
 COPYRIGHT MATERIAL OMITTED Joseph S. Lord, III, Philadelphia, Pa. (Leo Gitlin, New York City, and Richter, Lord & Levy, Philadalphia, Pa., of counsel on the brief), for plaintiff-appellee.
 Barrett, Molloy, Geoghan & Swiggett, New York City (Samuel E. Swiggett, New York City, of counsel on the brief), for defendants-appellants.
 Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.
 LUMBARD, Circuit Judge.
 From a jury verdict for the plaintiff for $32,000, of which $20,000 represented punitive damages, the defendants appeal.
 The defendants-appellants, Gaytime Shops, Inc., Wrights Apparel, Inc., and Frankford-Cottman Corporation are members of a family of corporations dealing in ladies apparel. Originally De Ronde, a citizen of Ohio, brought two suits: one in the Southern District of New York against Gaytime, a New York corporation, Wrights, an Illinois corporation, and the Globe Indemnity Company, of New York; and the other in the Eastern District of Pennsylvania against Frankford-Cottman, incorporated in Pennsylvania, and Globe. The Pennsylvania action was transferred to the Southern District of New York and both actions were consolidated. During trial the action against Globe was discontinued, and on this appeal plaintiff concedes that there is no basis for any liability on the part of Wrights and that the judgment against it be vacated.
 
 
 1
 De Ronde's suit is based on Gaytime's action on behalf of Frankford-Cottman, in filing with Globe, the indemnity company which bonded the employees of the two corporations, a proof of loss which charged De Ronde with having "misappropriated" $250 in cash "with intent to fraudulently deprive" the claimant of that sum. The defendants seek to have the judgment reversed on several grounds: (1) that Frankford-Cottman was not liable for the tortious conduct of its agent Gaytime; (2) that the charge was essentially true; (3) that the defendants did not abuse their qualified privilege in publishing the proof of loss; and (4) that certain errors were committed by the trial judge in his charge to the jury and in the admission of evidence.
 
 
 2
 In April 1953 De Ronde was employed by Frankford-Cottman to manage one of its stores in Philadelphia. The terms of the contract of employment recited that if De Ronde worked for Frankford-Cottman for two months it would pay the cost of transporting De Ronde's household furniture from Syracuse, New York to Philadelphia, about $237. (The furniture was actually stored in Charlotte, North Carolina.)
 
 
 3
 On September 23, 1953 De Ronde took $250 from the cash register of the store which he managed and substituted his personal check in the same amount. He had cashed his own checks in the same manner on thirteen previous occasions. The following morning he was discharged for reasons which do not appear but which concededly have nothing to do with his cashing of the $250 check.
 
 
 4
 De Ronde testified that his immediate supervisor offered him, at the time of the discharge, a week's severance pay in return for a release for moving expenses mentioned in the contract. De Ronde refused and the following day, after ascertaining that the moving bill was $236.75, went to an attorney who advised him that he could stop payment on the $250 check, set off his claim of $236.75 for the moving, and tender the balance to Frankford-Cottman. Acting on this advice, De Ronde stopped payment on the check. He thereafter made several trips to New York and explained his actions to Keat, Comptroller of the defendant corporations. In December, through his attorney, De Ronde made a tender of the $13.25 balance, which Keat refused.
 
 
 5
 Meanwhile in New York City on November 18, 1953, Benjamin Rosner, Secretary-Treasurer of both Gaytime and Frankford-Cottman, apparently without knowledge of the facts and having made no effort to ascertain them, signed a sworn proof of loss for the $250 stating that the money had "been misappropriated by said Murray De Ronde to his own use and benefit with the intent to fraudulently deprive the said Gaytime Shops, Inc. of same." This statement was conceded to be in substance a charge of embezzlement. When Rosner signed the proof of loss he did so as an officer of Gaytime which acted as the agent of Frankford-Cottman. The proof of loss was then forwarded to Globe for reimbursement under the indemnity policy.
 
 
 6
 Following his discharge, De Ronde, who had had fifteen years experience in the retail ladies wear line, attempted to secure other employment. He testified that he had been interviewed by a Mr. Levy in connection with a job and that during the interview "Mr. Levy said he spoke to Mr. Keat and he wanted to know what this $250 was all about." De Ronde also testified that a Mr. Bernstein, another prospective employer, after contacting him in regard to a position with his firm, later advised him that he was being "blackballed by your last employer" and refused him the job.
 
 
 7
 The first point urged by the appellants is that Frankford-Cottman cannot be held liable for the tortious conduct, if any, of its agent Gaytime, because the doctrine of respondeat superior has no application to the relationship. This question apparently was not raised at trial, for Frankford-Cottman admitted in its answer that it made the charge against the plaintiff. In any event, this argument has no merit. Although the doctrine of respondeat superior has application only to the masterservant relationship and is inapposite here, Frankford-Cottman may still be held liable on basic principles of agency. One corporation may act as agent for another, and if the agent, while acting within the scope of the agency, commits a tort, the principal will be held liable for it. Restatement of Agency § 212; Mechem, Agency §§ 130, 1855 (2d Edition 1914).
 
 
 8
 Here it is obvious that Gaytime was acting as agent for Frankford-Cottman and was authorized by it to file proofs of loss. The policy insured "Gaytime and its subsidiaries," and under clause D of the General Agreements of the policy Gaytime was to "act for itself and for each and all of the Assured for all purposes of this Policy." Since only Frankford-Cottman was involved in the alleged embezzlement, and not Gaytime, it is obvious that Gaytime was filing the proof on behalf of Frankford-Cottman in accordance with the policy provisions.
 
 
 9
 Appellants secondly insist that we should hold as a matter of law that the defense of truth was established. We do not agree. The charge contained in the proof of loss embraced the crime of embezzlement, and under the law of Pennsylvania, where the act occurred, embezzlement requires a criminal intent. Commonwealth v. Irvine, 1937, 125 Pa. Super. 606, 190 A. 171. The existence or non-existence of such a criminal intent was, in this case, a question of fact for the jury. The evidence warranted a finding that there was absence of criminal intent and that consequently the charge was not true.
 
 
 10
 Third, the defendants claim that a qualified privilege existed between them and Globe, and that this privilege can be lost only where there is a showing of actual malice, i. e., ill will. Under the law of the State of New York, which governs because the publication took place in New York, the malice necessary to destroy a qualified privilege "does not mean alone personal ill will. It may also mean such a wanton and reckless disregard of the rights of another as is ill will's equivalent." Pecue v. West, 1922, 233 N.Y. 316, 135 N.E. 515, 517. Cf. also Loewinthan v. Le Vine, 1st Dept. 1946, 270 App.Div. 512, 60 N.Y.S.2d 433 and Kaplan v. Gawron, Sup.Ct.Kings County 1946, 66 N.Y.S.2d 63. And the finding of wantonness and recklessness by the jury here is supported by the evidence, for it is scarcely open to doubt that the claim was filed without a proper investigation and in such a careless way as to amount to a reckless disregard of the plaintiff's rights.
 
 
 11
 The appellants further claim error as to part of Judge Leibell's instructions to the jury. Judge Leibell had charged that the qualified privilege would exist "unless the plaintiff shows by a fair preponderance of the evidence that the conduct of the defendant, in filing the proof of loss, was actuated by malice and intent to harm or injure the plaintiff * * * or was the result of such conduct on the part of the defendant, without proper investigation * * * as would evidence a reckless disregard on the part of the defendant of the right of the plaintiff to have his name protected against any defamation." The defendants contend that there was no evidence in the case of actual malice and that the District Court erred in submitting to the jury that alternative. We do not agree, but believe there was sufficient evidence of actual malice to warrant submission of the question to the jury.
 
 
 12
 The alleged errors in the admission of evidence are likewise of little substance. First, the defendants contend that the parol evidence rule was violated by the court. De Ronde was allowed to testify that when he had pointed out a mistake in his contract of employment, in that his furniture was stored in Charlotte rather than in Syracuse, he had been assured that the place named was not material if the amount was right. The parol evidence rule applies only where enforcement of an obligation created by the writing is substantially the cause of action. This is not the case here for this evidence was introduced on the question of De Ronde's intent at the time he cashed the check, an element crucial to the defense of truth.
 
 
 13
 The defendants also contend that the admission of the thirteen checks was error. They were De Ronde's personal checks which he had cashed in the same manner as the $250 check in question. He testified that it was not unusual for him to cash personal checks out of store receipts and that his supervisor had seen them in the cash drawer and had never questioned the procedure. The checks were offered and defendants' counsel objected to their admission. The checks were clearly admissible as circumstantial evidence of De Ronde's intent in cashing the $250 check. See Wigmore, Evidence § 329 et seq., Vol. II (3d Edition).
 
 
 14
 Objection is lodged also to those portions of De Ronde's testimony wherein he relates certain conversations he had with prospective employers, including those with Levy and with Bernstein. The plaintiff testified that these prospective employers told him that they would not hire him because of what they had heard from the defendants concerning the incident in question. The defendants contend that this evidence was hearsay. The testimony was offered to prove the motive of these prospective employers. If hearsay, it comes within a well defined exception to the rule. Lawlor v. Loewe, 1915, 235 U.S. 522, 536, 35 S.Ct. 170, 59 L.Ed. 341; Wigmore, Evidence § 1729, Vol. VI (3d Edition), although some authors would not even consider this as hearsay. Richardson, Evidence § 211 (8th Edition, Prince).
 
 
 15
 The defendants contend also that De Ronde's testimony as to the advice his lawyer gave him, was hearsay. This evidence was introduced to prove the state of mind of the plaintiff when he stopped payment on the check and not for the truth of the statement. As such it was not hearsay. Wigmore, Evidence § 1783 et seq., Vol. VI (3d Edition).
 
 
 16
 Defendants' last assignment of error concerns De Ronde's testimony as to his earnings or lack of earnings after his dismissal from Frankford-Cottman. Apparently the defendants feel that this is irrelevant. We do not agree. The testimony of De Ronde's failure to secure employment in the retail ladies wear business during 17 months following his discharge was relevant to show the amount of his pecuniary loss, and supported the allegation of damages. The nexus between these damages and the defamation is obvious.
 
 
 17
 The judgment is affirmed except as to Wrights Apparel, Inc. as to which it is reversed.
 
 
 18
 On Petition for Rehearing and Application for Stay of Mandate.
 
 PER CURIAM:
 
 19
 Petition for rehearing and application for stay of mandate denied.