Desmond, J.
This action for libel and slander was brought by a physician-surgeon against Health Insurance Corporation (HIP) and against Dr. Baehr, its president and medical director, and Dr. Daily who was the vice-president, deputy medical director and Medical Control Board chairman of HIP. HIP is a nonprofit membership corporation which sells medical expense indemnity insurance (see Insurance Law, art. IX-C) to some 500,000 insurees. The indemnified medical care is made available to the insured persons by 32 partnerships of physicians. Each partnership is called a Medical Group. An insured person chooses a particular Group for his medical care. Each Medical Group is an independent contractor with HIP and each has in its membership general practitioners and specialists, including surgeons. The contracts between the Medical Groups and HIP and between HIP and its insureds provide that medical services are to be rendered in accordance with accepted medical and surgical practices and in accordance with standards adopted by the Medical Control Board of HIP. That Control Board has 15 members. Two of them (defendants Baehr and Daily) were employees or officials of HIP, 5 represented the Medical Groups and 8 were prominent physicians from the community.
The several counts of the amended complaint set forth a number of alleged defamatory statements, some oral and some in writing, made by defendants on four dates in December, 1953 *59 and January, 1954. Substantially all the alleged libels and slanders were made by defendants Dr. Baehr and Dr. Daily at HIP Medical Control Board hearings called to investigate plaintiff’s qualification to act as surgeon for his G-roup or were made in communications to Eastern Parkway Medical Group (plaintiff’s Group) notifying it of the Medical Control Board’s conclusion that plaintiff was not qualified and of the board’s decision rescinding its approval of plaintiff as a Group surgeon, or were made to Medical Group Council, an organization of various HIP Medical Groups. It is the theory of the suit that these statements defamed plaintiff by charging him with lack of competence as a surgeon, by stating that his hospital appointments or staff memberships had been cancelled or not renewed by reason of his incompetency, by asserting that he does not meet the minimal requirements for HIP for surgery and that he lacks adequate surgical training and skill, and by charging that plaintiff willfully withheld information from HIP and willfully made misrepresentations to HIP and concealed facts from HIP as to his hospital connections and as to his qualifications and experience.
Each cause of action in the amended complaint alleges that the particular statement therein set forth was made in bad faith, without justification, in disregard of plaintiff’s rights and with intent to injure plaintiff professionally, and that each libel or slander was motivated by actual malice. The answer admits that defendants Baehr and Daily, in making the statements, were acting within the scope of their authority and employment with HIP. Admitted also in the answer is the making of some, but not all, of the alleged defamatory statements. The answer then sets up as a first separate defense: that these statements, if made, were published, in the course of defendants’ duties, to persons who had an interest in the matter, in good faith and without malice, and so were privileged. The other separate defenses in the answer are to the effect that the statements complained of were true in fact or in substance or were based on trustworthy information believed by defendants to be true.
*60 When the pleadings were complete, defendants moved on affidavits (Rules Civ. Prac., rule 113) for summary judgment on the ground that all the communications complained of were made because of defendants’ duties and obligations and so were privileged. Plaintiff, opposing the motion, conceded qualified or conditional privilege and both courts below held that the circumstances and relationships were such as to produce a qualified privilege provided that the publications had been made without actual malice. (Malice destroys a qualified privilege, Andrews v. Gardiner, 224 N. Y. 440, 446.)
Plaintiff, opposing summary judgment, served his own affidavit in which he charged defendants with malice and reckless disregard of his rights and interests. Summary judgment was denied. Both courts below concluded that plaintiff’s affidavit showed that there.was a triable issue of fact as to actual malice. The Appellate Division granted defendants leave to appeal to this court.
After a brief survey of the applicable law (not really in dispute) we will examine the opposing affidavits to sec whether plaintiff has, by evidentiary facts, verified his charge of actual malice, at least to the extent of showing that there is a real, triable issue as to such malice.
“ ‘ A communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation ’ ” (Byam v. Collins, 111 N. Y. 143, 150). “ The rule of law that permits such publications grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person. Such privilege is known as a qualified privilege. It is qualified because it does not extend beyond such statements as the writer *61 makes in the performance of such duty and in good faith believing them to be true ” (Bingham v. Gaynor, 203 N. Y. 27, 31). When defendant’s statements are presumptively privileged the rule is that, in order to render them actionable, it is “ incumbent on the plaintiff to prove that [they were] false and that the defendant was actuated by express malice or actual ill-will. While there are numerous cases in the books in which it is said that as to privileged communications the good faith of the defendant and the existence of actual malice are questions of fact for the jury, the expression must not be misunderstood. Those questions are for the jury only where there is evidence in the case warranting their submission to the jury, and the burden of proof is on the plaintiff” (Ashcroft v. Hammond, 197 N. Y. 488, 495-496; see Hemmens v. Nelson, 138 N. Y. 517, 529). Falsity is not sufficient for an inference of malice. “ ‘ It must be * # * consistent only with a desire to injure the plaintiff to justify * * * [sending] the question of malice to the jury ’ ’’ (Fowles v. Bowen, 30 N. Y. 20, 26; see Loewinthan v. Le Vine, 299 N. Y. 372, 375). “By actual malice is meant ‘ personal spite or ill will, or culpable recklessness or negligence’” (Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95, 106).
For the background facts, we turn to defendants’ affidavits and exhibits. Although defendants do not have the burden of showing lack of malice, the documents themselves, consisting of actual minutes of hearings and meetings and attached to the opposing affidavits, go far toward negating malicious motivation. They show that in 1953 Drs. Baehr and Daily were informed that plaintiff’s malpractice liability insurance was about to be cancelled (or would not be renewed) by the insurer because of alleged fault. HIP’s Medical Group agreements required the carrying of such insurance by each member physician. Investigation by defendants showed that the malpractice liability insurer had made money settlements of malpractice suits arising from surgical operations performed by plaintiff. After HIP got this news, there followed conferences and hearings of the HIP Medical Control Board, at some of which plain *62 tiff was present and at which there were discussed not only this malpractice insurance matter but also the alleged loss by plaintiff of his former hospital staff memberships, also an alleged opinion by the chief surgeon of one such hospital as to plaintiff’s incompetency as a surgeon, also an alleged misrepresentation by plaintiff about his status on other hospital staff or staffs. At these Control Board hearings there was presented information that the recommendation for nonrenewal of the malpractice insurance had come from a board or committee of the Medical Society of the State of New York. Other information received and disclosed was that plaintiff’s “ appointments ” in surgery at two Brooklyn hospitals had not been renewed, and that one of these failures to reappoint him had been' because of an opinion by the Chief of Surgery of that hospital that plaintiff lacked the ability to perform major surgery. Plaintiff admitted at the first hearing held by the HIP Medical Control Board that his malpractice insurance was threatened with nonrenewal because of the insurer’s substantial-amount settlements of two malpractice suits against plaintiff.
Plaintiff in effect admitted that two of his former hospital staff appointments had lapsed but insisted that no charge of his incompetency was involved. At the first hearing he said that he had two new hospital connections but later a doubt arose, from information received by defendants, as to whether these new associations really meant that plaintiff was an active member of the two new hospital staffs. At the hearings plaintiff pointed out that he had been approved some years before by HIP as a Group surgeon but the answer made to this was that defendants retained the power to review the qualifications of Group members, at any time.
At an executive session held after the first hearing, defendant Daily called to the Medical Control Board’s attention that the two malpractice cases, according to his information, revealed gross incompetency. - The Medical Control Board then temporarily withdrew its approval of plaintiff as a surgeon in his Medical Group.
*63 At a later meeting of the Control Board, plaintiff offered a written analysis of some 1,800 major surgeries performed by him up to 1950 (three years before this hearing) which list was apparently disregarded by the board. He made various explanatory statements about the hospital staff matters. It appeared that one of his new hospital appointments was not to ‘ ‘ general surgery ” as he had previously asserted, but was limited to ‘ ‘ traumatic surgery ’ ’. There were other executive sessions of the Control Board at which statements were made by defendants Baehr and Daily and others that plaintiff lacked the necessary professional qualifications. The final result was that the board declared him not qualified and rescinded its 1950 approval. These minutes seem to show a careful and fair investigation of the whole matter. In themselves they seem to show that the motivation was not malice, but duty.
We now examine plaintiff’s answering affidavit in which he seeks to overcome all this by showing actual malice. In examining that affidavit we remind ourselves that there is a positive requirement that it must show evidentiary facts (O’Meara Co. v. National Park Bank, 239 N. Y. 386, 395) and that a motion for summary judgment may not be defeated by charges “ based upon surmise, conjecture and suspicion” (Bank for Savings v. Rellim Constr. Co., 285 N. Y. 708-709).
Plaintiff’s answering affidavit says that, as the head of his Medical Group, he had differed sharply and often with defendants Baehr and Daily and other HIP officials on matters of policy and that this had engendered the animosity of defendants and caused them to regard him as a troublemaker. Plaintiff avers that defendants resented this opposition and made derogatory statements about him — but no details as to such alleged statements are given. Plaintiff swears that this ill will and malice toward him brought about a conspiracy to defame him and to remove him as a Medical - Group surgeon. But here again there are no specifications of the where and when of the conspiracy or anything beyond plaintiff’s say-so. He alleges that the hearings were a mock trial only, called to effect a pre *64 determined result. He complains of short notice of the hearings but admits that he was given a two-weelc adjournment to prepare his defense. He complains of the refusal of defendants, at the second hearing, to examine his 1,800 case histories of earlier surgeries but this refusal is not shown to have been malicious or arbitrary. He admits that defendants had received notice of the nonrenewal of his malpractice insurance but says that the man who gave that information (which was correct information) was himself moved by malice and ill will toward plaintiff because plaintiff had been trying to persuade plaintiff’s Medical Group to transfer its insurance to a different insurer.
Nowhere in plaintiff’s affidavit are there any evidentiary facts (as distinguished from mere conclusory allegations). Facts from which a jury could infer malice are not revealed. Defendants had a duty and a right to investigate and to communicate the results of their investigation to other similarly interested persons. Those communications were privileged unless made because of malice. It was for plaintiff to show that he had facts available to prove such malice. He produced none. Suspicion, surmise and accusation are not enough. The existence of earlier disputes between the parties is not evidence of malice (Hemmens v. Nelson, 138 N. Y. 517, 524, supra; Ashcroft v. Hammond, 197 N. Y. 488, 496, 498, supra).
The order appealed from should be reversed, the certified question answered in the negative and defendants’ motion for summary judgment dismissing the complaint granted, with costs in all courts.
Chief Judge Conway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order reversed, with costs in all courts, and the case remitted to Special Term for further proceedings in accordance with the opinion herein. Question certified answered in the negative.