**Arnulfo JIMINEZ, Plaintiff,**

v.

**MARITIME OVERSEAS CORPORATION and Walter L. Reinhart, Defendants.**

**No. 72 Civ. 3371.**

United States District Court,
S. D. New York.

June 11, 1973.

Motion Granted July 5, 1973.

Paul C. Matthews, New York City, for plaintiff.

Haight, Gardner, Poor & Havens, New York City, for defendants; by William P. Kain, Jr., Thomas F. Molanphy, New York City, of counsel.

GURFEIN, District Judge.

On January 30, 1970, the plaintiff, Arnulfo Jiminez, began an action in this Court against Maritime Overseas Corporation and Sea Liberties, Inc. (70 Civ. 394 ELP) to recover damages, maintenance and cure arising out of injuries allegedly sustained by him aboard the S/S Overseas Explorer. Among the injuries which the plaintiff claimed to have sustained were permanent and continuing injuries to his right hip and lower back. The plaintiff's suit for injuries allegedly sustained was tried during the period March 13 to March 17, 1972 and resulted in a $14,000 verdict in the plaintiff's favor.

During the pendency of the plaintiff's suit to recover for injuries sustained aboard the Overseas Explorer the plaintiff obtained employment aboard the Overseas Suzanne, which vessel was also operated by Maritime. While employed aboard the Overseas Suzanne the plaintiff allegedly suffered an exacerbation of the back and hip injuries which he claimed were initially sustained aboard the Overseas Explorer. In connection with his claim of exacerbation the plaintiff was examined by, among others, a Dr. Kim in Pusan, Korea. Dr. Kim in his report of his examination of the plaintiff noted a positive reaction to a VDRL test and indicated that syphilis was suspected. On or about January 7, 1972 the plaintiff was repatriated by air from Korea to the United States.

During January 1972, Strachan Shipping Company was the New Orleans agent for Maritime. On or immediately prior to January 13, 1972, the plaintiff appeared at the office of Strachan, New Orleans, presented a MRDS slip dated January 11, 1972 which classified him as not fit for duty because of his right hip for a period of two weeks thereafter, and demanded payment of maintenance and cure. On January 13, 1972 Strachan forwarded a copy of the MRDS slip dated January 11, 1972 to Maritime in New York, stating that the plaintiff was applying for maintenance and cure benefits for the period of alleged disability.

On January 17, 1972, Walter L. Reinhart, Assistant Manager, P & I Department for Maritime, acting in the course of his employment, replied to Strachan stating that they were unable to comply with the plaintiff's request for mainte-

nance and cure benefits since their records indicated that the plaintiff had been repatriated for further treatment for "active syphilis."

A copy of Mr. Reinhart's letter of January 17, 1972 to Strachan was forwarded to Wilson & Hopkins, the attorneys then defending the plaintiff's suit for injuries allegedly sustained aboard the Overseas Explorer.[1]

The plaintiff sues for libel. Jurisdiction is based on diversity of citizenship, the plaintiff being a citizen of Louisiana and the defendants being citizens of New York. The defendants move for summary judgment.

■ The law to be chosen is either the law of the State where the publication took place, De Ronde v. Gaytime Shops, 239 F.2d 735, 738 (2 Cir. 1957), or the State which has the most significant relation to the action. Restatement of Conflict of Laws 2d, Section 149. The Restatement states:

"Section 149. Defamation.

In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties . . . unless, with respect to the particular issue, some other state has a more significant relationship under the principle stated in Section 6 to the occurrence and the parties, in which event the local law of the other state will be applied."

■ In this case the letters were written and "published" in New York. Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505 (1931). Both the defendants are citizens of New York. The party to whom copies were sent was Wilson & Hopkins, a New York law firm. The plaintiff could have served Maritime through its agent in New Orleans but chose to bring suit here. The pendency of the action for maritime injuries in this Court gave rise, in part, to the claim of qualified privilege. I shall, accordingly, apply New York law to the determination of the motion for summary judgment.[2] There is no doubt that the letter to Strachan and the copy of the letter to Wilson & Hopkins, the attorneys, constituted publication. Ostrowe v. Lee, *supra.*

■ The letter to the attorneys was probably covered by an absolute privilege, because the statement was material to the lawsuit they were defending. Youmans v. Smith, 153 N.Y. 214, 219, 47 N.E. 265 (1897).

■ The letter to Strachan, the agent of the steamship company defendant, was covered by a qualified privilege, for Strachan was authorized to receive and process claims by Maritime's seamen in the New Orleans area for maintenance and cure. Shapiro v. Health Ins. Plan, 7 N.Y.2d 56, 60–61, 194 N.Y.S.2d 509, 163 N.E.2d 333 (1959). In *Shapiro* the Court of Appeals said:

"[The] defendants had a duty and a right to investigate and to communicate the results of their investigation to other similarly interested persons. Those communications were privileged unless made because of malice. It was for plaintiff to show that he had facts available to prove such malice. He produced none. Suspicion, surmise and accusation are not enough." 7 N.Y.2d at 64, 194 N.Y.S.2d at 515, 163 N.E.2d at 338.

The qualified privilege is conceded here, for the plaintiff alleges that Reinhart wrote the letter "in the course of his employment."

---

1. Although no other publication of the alleged libel is mentioned in the complaint, it appears from the papers submitted on this summary judgment motion that in a report made to the Marine Index Bureau, Inc. on January 14, 1972 the verbatim language of Dr. Kim was quoted: "The result of VDRL is positive, so that syphilis is suspected."

2. Although the defendant has briefed the matter, alternatively, under Louisiana law as well, the plaintiff in his brief appears satisfied to have New York law applied.

■ When a qualified privilege exists it is not necessary for the defendant to show that the statement is true. See Bingham v. Gaynor, 203 N.Y. 27, 31, 96 N.E. 84 (1911). In such case, it is incumbent on the plaintiff to prove actual malice or reckless disregard of the truth. Ashcroft v. Hammond, 197 N.Y. 488, 495–496, 90 N.E. 1117 (1910).

We may test the alleged libel first by determining whether it was published within the area of the qualified privilege.

■■ There is no doubt that if a seaman does have syphilis he is not entitled to maintenance and cure. Zambrano v. Moore-McCormack Lines, 131 F.2d 537, 539 (2 Cir. 1942); Trimm v. United Fruit Co., 41 F.Supp. 395 (S.D. N.Y.1941); see Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 731, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). And surely where he claims aggravation of a back injury that relates to a lawsuit still pending, the condition of syphilis might well be material in defending that action. So far as the claim for maintenance and cure was concerned, the defendant shipowner could not refuse it arbitrarily, but had to set forth his reasons for the refusal. See e. g. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). Obviously for an agent in New Orleans to know the reason for the company's refusal to allow maintenance and cure, he must be told the reason by some one in the organization.

The language of the Restatement 2d Torts, Vol. 3, p. 240 is apposite:

"Occasions conditionally privileged afford a protection based upon a public policy which recognizes that it is essential that true information shall be given whenever it is reasonably necessary for the protection of one's own interest, the interest of third persons, or certain interests of the public. In order that such information may be freely given, it is necessary to afford protection against liability for misinformation given in an honest and reasonable effort to protect or advance the interest in question. Were such protection not given, true information which should be given or received would not be communicated through fear of persons capable of giving it that they would be held liable in an action of defamation unless they could meet the heavy burden of satisfying a jury that their statements were true."

There is no claim that Reinhart concocted the notion out of the blue that the plaintiff had syphilis. He was alerted to the suspicion by the communication which showed that Dr. Kim in Korea had found the VDRL test "positive, so that VD Syphilis suspected," [3] and that Dr. Kim "[r]ecommended to him to be recieved (sic) by re-examination in the United States for suspecting (sic) syphillis (sic)." [4]

The problem arises from the misinterpretation or exaggeration of the report of Dr. Kim. Reinhart, as Assistant Manager of the Claims Department, expanded his relay of the medical report from the finding of a positive test which raised "suspicion" of syphilis to a statement that the plaintiff had "active syphilis."

■ In the circumstances, as we have seen, the burden of proving malice or reckless disregard of the truth shifted to the plaintiff because of the qualified privilege. We must assume, therefore, that even if the imputation of syphilis was a libel per se and that truth is factually not available as a defense, the burden of establishing malice in law is still upon the plaintiff. The plaintiff has come forward with no evidence to rebut Reinhart's affidavit that he did not know the plaintiff and had no ill will toward him. So far as Maritime is concerned, the only suggested reasons for malice on the part of the company are

---

3. Exhibit E to defendants' affidavits.

4. Exhibit 1 to Matthews' affidavit.

that the plaintiff had brought a lawsuit against the defendant and that, after its attention was called to the "truth," the company had failed to retract the statement.

■ While "malice" goes beyond personal ill will and encompasses "such a wanton and reckless disregard of the rights of another as is ill-will's equivalent," Pecue v. West, 233 N.Y. 316, 322, 135 N.E. 515, 517 (1922), that means "more than mere negligence or want of sound judgment" or "hasty or mistaken action." *Id.*

In deciding what the New York Court of Appeals would do in this situation I am guided by *Shapiro, supra,* where the Court stated that summary judgment should be granted for the defendant in a libel case if "nowhere in plaintiff's affidavit are there any evidentiary facts (as distinguished from mere conclusory allegations)" 7 N.Y.2d at 64, 194 N.Y.S.2d at 515, 163 N.E.2d at 337.[5] The existence of a lawsuit between the parties is alone insufficient evidence of malice to rebut the presumption of good faith inherent in the qualified privilege. On the contrary, if the company actually believed that the plaintiff did not have active syphilis, but told its lawyers and agents that he did, it would have been misleading its own lawyers and agents. It is nowhere suggested how it could have profited from such self-delusion to a degree that would make it evidentiary of malice.

With respect to the failure to retract as evidence of malice, the only evidence presented to the company by the plaintiff's counsel was another VDRL test

taken three weeks later, which was non-reactive. The retraction was demanded on January 28, 1972. The pending suit to recover for injuries sustained aboard the Overseas Explorer was not tried until March 13, 1972. Thus, prior to the trial, the defendant was confronted with two apparently contradictory VDRL tests, each taken within a short time of the other. That hardly makes it conclusive that the plaintiff did not have syphilis.[6] A premature retraction could have damaged the defense of the action if it later turned out, on a physical examination, that the plaintiff did have syphilis when he left the vessel.

In these circumstances, I believe that the New York Court of Appeals would uphold the grant of summary judgment. Applying the substantive law of New York there are no factual issues tendered which would defeat summary judgment under Fed.R.Civ.P. 56.

The motion for summary judgment is granted in favor of the defendants.

It is so ordered.

### ON REARGUMENT

The motion for reargument is granted, and upon reading the briefs, the Court adheres to its decision dismissing the complaint.

It should be observed that the plaintiff's emphasis on De Ronde v. Gaytime Shops, 239 F.2d 735 (2 Cir. 1957) and Stephens v. Columbia Pictures Corp., 240 F.2d 764 (2 Cir. 1957), both of which applied New York law, is not convincing because Shapiro v. Health Ins. Plan, 7 N.Y.2d 56, 194 N.Y.S.2d 509, 163

5. As long ago as 1910 (in the days before summary judgment had become formalized) the Court of Appeals said of a directed verdict:
"While there are numerous cases in the books in which it is said that as to privileged communications the good faith of the defendant and the existence of actual malice are questions of fact for the jury, the expression must not be misunderstood. Those questions are for

the jury only when there is evidence in the case warranting their submission to the jury and the burden of proof is on the plaintiff." Ashcroft v. Hammond, *supra,* 197 N.Y. at 495–496, 90 N.E. at 1120.

6. The Merck Manual, 12th Ed. (1972) p. 1535 defines the VDRL as a serologic test for syphilis. The test is not, however, conclusive (p. 1807).

N.E.2d 333, which I consider the governing authority, was not decided until 1959.

No Second Circuit case on the New York law of qualified privilege since the *Shapiro* decision has been cited by the plaintiff.