Daniel H. OVERMYER and Shirley Overmyer, Plaintiffs-Appellants,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND et al., Defendants-Appellees.

No. 793, Docket 76–7566.

United States Court of Appeals, Second Circuit.

Argued April 14, 1977.

Decided May 3, 1977.

---

[9] We do not reach any question which might be raised were the state rules arguably in conflict with the federal rules.

Irwin M. Echtman, New York City (Easton & Echtman, New York City), for plaintiffs-appellants.

Arthur N. Lambert, New York City (Hendler & Murray, New York City, Jason D. Wallach, New York City, of counsel), for defendants-appellees.

Before CLARK, Associate Justice,* and MOORE and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This appeal reveals a crass misuse of both the state and federal judicial systems to avoid the payment of a judgment. In 1973 Eliot Realty, Inc. successfully brought an action against Overmyer Distribution Services, Inc. (Overmyer Inc.) in a Justice Court in Dallas, Texas to recover possession of real property. Overmyer Inc. appealed to the Dallas County Court obtaining from Fidelity and Deposit Company of Maryland (Fidelity), the appellee in this action, an appeal bond. Shirley and Daniel H. Overmyer, the appellants here, executed a general agreement of indemnity contracting to indemnify Fidelity for all losses, costs, damages and attorneys' fees it might sustain by reason of issuing the appeal bond. The County Court on October 12, 1973 not only affirmed the judgment of the Justice Court but further awarded Eliot Realty, Inc. money damages in the sum of $28,092.25, plus interest and costs, the value of the continued occupancy of the premises during the appeal. The court also directed that execution of the judgment be had against Overmyer Inc. and Fidelity as surety. Overmyer Inc. filed a notice of appeal but allegedly the company's counsel withdrew, leaving it unable to perfect the appeal. On December 7, 1973 Fidelity entered into a settlement agreement with Eliot Realty, Inc. by which Fidelity paid the sum of $25,535.85 to discharge its liability on the bond and to satisfy the judgment of the Texas court.

Fidelity then commenced an action in the New York State Supreme Court, County of New York, seeking to recover the amount of the judgment plus counsel fees. The defendants in that action were Overmyer Inc. and Daniel H. and Shirley Overmyer. Defendants' motion to dismiss the complaint was denied and Fidelity's cross-motion for summary judgment was granted in an order of Justice Nathaniel T. Helman on November 14, 1974. The Overmyers had questioned the good faith of Fidelity in settling the judgment. However, in an opinion in October, 1974 Justice Helman pointed out:

There is no affidavit by any of the defendants. Their counsel may raise questions, whether of fact or of law in Texas but his own clients are the best source of the answers. No question exists as to plaintiff's obligation when it is named as a judgment debtor and execution is granted against it. This is not a case where it was solely the surety. In any event, defendants contracted to indemnify upon payment, whether plaintiff was liable or not. Defendants have no defense against their contract obligation, and their attorney cannot create one by "surmise, conjecture and suspicion" (*Shapiro v. Health Insurance Plan of Greater*

* Tom C. Clark, Associate Justice, United States Supreme Court, Retired, sitting by designation.

*New York,* 7 N.Y.2d 56, 194 N.Y.S.2d 509, 163 N.E.2d 333).

Overmyer appealed from the judgment entered in November 1974 to the Appellate Division, First Department which unanimously affirmed the judgment on May 20, 1975. Overmyer then moved in the Appellate Division for a stay of enforcement of the judgment. The motion was denied as was another motion to reargue the motion for a stay. Overmyer then applied for leave to appeal to the New York Court of Appeals in both the Appellate Division and the Court of Appeals. Both motions were denied. Overmyer then applied to the United States Supreme Court for an extension of time to petition for a writ of certiorari. This was also denied.

During these appellate maneuverings the Overmyer defendants were also active in the State Supreme Court. On February 21, 1975 they moved by order to show cause to vacate the judgment pursuant to N.Y.C.P. L.R. § 5015(a)(2) upon the grounds of newly discovered evidence. Justice Markowitz denied the motion on April 11, 1975 finding the purported grounds to be without merit.

After the entry of the judgment in November a subpoena to examine Daniel H. Overmyer to determine his financial status was served upon him returnable on January 17, 1975. At his request the return date was postponed until March 17, 1975 at which time Overmyer failed to appear. Fidelity, the judgment creditor, then brought a motion on notice to punish Daniel Overmyer for contempt. On May 6, 1975 Overmyer, who had received notice of this motion, appeared by his attorneys and opposed the motion. Justice George Postel granted the motion and found Overmyer in contempt of court unless he appeared for examination on June 12, 1975. Characteristically, he failed to appear and on September 30, 1975 after notice Justice Postel signed an order finding Overmyer in contempt of court and imposed a fine of $260. The court directed that the contempt order would be purged and the fine remitted if Daniel Overmyer appeared for examination on October 29, 1975. Although Overmyer paid the fine in installments he did not appear for the October 29, 1975 examination. On June 4, 1976 after his counsel had filed papers in opposition the court once again found Overmyer in contempt directing the sheriff of any county to compel him to appear at the courthouse for examination under oath. Upon the eve of the directed apprehension Overmyer obtained a stay of the enforcement of the judgment and an order directing Fidelity to show cause why Overmyer should not be granted leave to reargue the prior motion to vacate the judgment on the grounds of newly discovered evidence. This "newly discovered evidence" was that Fidelity had influenced Overmyer Inc.'s attorneys in the Texas action to act against the Overmyer defendants' interest. With respect to this evidence Justice Tyler concluded:

> [U]pon a full presentation of defendants' "proof", it is the view of this Court that there is absolutely no basis for a stay insofar as the newly-discovered evidence is supposed to support it. All that the defendants have presented is a series of allegations that do not lead this Court to the conclusion that the instant motion should be granted. In point of fact, after reviewing the "proof" adduced by defendants, it is the belief of this Court that the instant motion is merely another ploy utilized by Overmyer in an attempt to avoid the full force and effect of a judgment entered in the Court as well as the several orders emanating thereafter.

Unpublished opinion in *Fidelity and Deposit Company of Maryland v. Daniel H. Overmyer et al.,* Index No. 5920/74 (Sup.Ct.N.Y. County, June 23, 1976) at 5. After hearing argument on both sides, Justice Tyler denied the motion to reargue, vacated the stay and once again directed that Overmyer appear for examination. The sheriff of any county was authorized to apprehend Daniel Overmyer and compel his attendance for examination at the courthouse on June 29, 1976.

In the same opinion of June 23, 1976 Justice Tyler commented:

This court finds the litany of evasion and noncompliance in which the defendant judgment debtor has engaged to be absolutely incredible. The utter disrespect which Overmyer has shown, not just for the prior order of this court, but for the entire system of jurisprudence by which this court and this society operates is reprehensible.

The efforts of the Overmyers to delay or defeat the day of judgment however did not end. On June 29, 1976 Daniel and Shirley Overmyer brought an action in the Southern District of New York seeking injunctive relief and damages against Fidelity, the State of New York, Justice Tyler, Thomas J. Delaney, the Sheriff of Westchester County and Edward A. Pichler, the Sheriff of New York County. Plaintiffs requested the convening of a three-judge court to consider their constitutional claims which were that the New York statutes relating to civil contempt, N.Y. Judiciary Law §§ 756, 757, 765, 767, and 769–775, were invalid because they violated the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution. The complaint requested that permanent and preliminary injunctive relief be granted against the defendants to prevent enforcement of the contempt statutes. Pending the convening of the three-judge court a temporary restraining order was requested to be issued for the same purpose. Plaintiffs' complaint also contained a pendent claim against Fidelity based on its alleged influence over Overmyer Inc.'s lawyers in the Texas action. Damages of $100,000 were requested.[1]

The action came before the Hon. Milton Pollack, United States District Judge for the Southern District of New York. In an opinion and order of October 18th, 1976 the trial court denied plaintiffs' motion for a preliminary injunction [2] and granted Fidelity's motion to dismiss the complaint.[3] This appeal followed.

We need not tarry long with the constitutional issues raised by the appellants. In the court below they relied upon *Vail v. Quinlan,* 406 F.Supp. 951 (S.D.N.Y. 1976), the decision of a three-judge court finding the New York State contempt law unconstitutional. Judge Pollack found *Vail* to be inapposite since that case involved ex parte contempt findings resulting in imprisonment against pro se debtors. In the *Overmyer* case all of the motions were noticed and the plaintiffs were represented by counsel on all occasions. Moreover, the order here which Overmyer sought to enjoin was pursuant to N.Y.C.P.L.R. § 2308(a) directing the sheriff to bring Overmyer to be examined under oath; he was never threatened with incarceration. No attack was levied against this section but rather against §§ 756, 757, 765, 767 and 769–775 of the Judiciary Law which would have come into play if the New York court had decided to imprison Overmyer for contempt. In any event, *Vail v. Quinlan, supra,* was reversed by the Supreme Court, sub nom.

---

1. The pendent damage claim against Fidelity was based upon allegations of its fraud and bad faith in settling the Texas action. It is significant that aside from the conclusory allegations of the complaint, the plaintiffs, as in the motion before Justice Tyler in which they attempted to vacate on the grounds of newly discovered evidence, have submitted no affidavits to support the charge of fraudulent behavior by Fidelity. On its face the accusation is incomprehensible. Why would Fidelity pay a substantial settlement for the privilege of pursuing the Overmyers to recover its damages from them?

2. By stipulation and order of September 7, 1976 it was provided that the State of New York and Justice Tyler be granted up to 20 days after the Supreme Court's decision in *Juidice v. Vail,*

infra, to answer and so are not parties to this appeal. Defendant Pichler never appeared.

3. In denying the motion for a preliminary injunction Judge Pollack aptly characterized the specious nature of the Overmyers' federal action: "The complaint herein by conclusory allegations raises a sham issue in the light of the evidence submitted on the application for temporary and injunctive relief. . . . Plaintiffs do not satisfy the criteria for injunctive relief on the actual matter involved, viz., probability of success on the merits by raising a semantic semblance to an irrelevant constitutional question . . . ." *Overmyer v. Fidelity and Deposit Co.,* 76 Civ. 2876 (MP) (S.D.N.Y. Oct. 18, 1976) at 8.

*Juidice v. Vail,* —— U.S. ——, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) which held that the district court should have abstained under the doctrine of · *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court found "[t]he contempt power lies at the core of the administration of a State's judicial system". —— U.S. at ——, 97 S.Ct. at 1217. Therefore, the Court concluded that granting injunctive relief would constitute an improper interference with the state system prohibited by *Younger.* The Court held that for a federal court to abstain it was only necessary for the plaintiffs to have had the opportunity to raise the federal issue before the state court; it was not necessary that a hearing be held if they failed to employ available procedures. Overmyer had ample opportunity to raise his federal claims before the state court. Thus, even if his constitutional claims had any merit, we could not consider them. Since there is no basis for diversity jurisdiction, diversity not having been alleged, the pendent claim was properly dismissed.

Appellants admit, as they must, that their constitutional argument is foreclosed here in light of *Juidice v. Vail, supra.* However they argue that this court should "correct" Judge Pollack's opinion since his holding that the constitutional issues had been decided against them in the state court barred their adjudication in the federal court *Thistlethwaite v. City of New York,* 497 F.2d 339 (2d Cir.), cert. denied, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974). There is no need for this court to take such action. If the appellants are correct in their position that the federal constitution questions were never litigated in the state courts, surely the state courts are competent to make that determination

without reference to or limitation by the federal opinion appealed from.

▆▆▆ 28 U.S.C. § 1912 and Federal Rule of Appellate Procedure 38 authorize this court upon a determination that an appeal is frivolous to award just damages and single or double costs to the appellee. *Teledyne Industries, Inc. v. Podell,* 546 F.2d 495 (2d Cir. 1976). The history of this litigation in the state courts and its continuation in the federal court, even before the Supreme Court had demolished the only semblance of support plaintiffs could muster, serves to illustrate that this appeal was and is frivolous. This court has been utilized, as were earlier the state and district courts, as a device to frustrate the collection of a judgment of a state court. We assess the appellants double costs and in addition $2000 in attorneys' fees.[4] The mandate shall issue forthwith and shall not be stayed by the filing of a petition for rehearing.

---

**4.** It has not escaped our attention that appellants were assisted by counsel before both the district court and this court in bringing this sham suit and appeal. We have warned counsel in immigration matters about abusing the process in this court to gain delays in deportation. *Hibbert v. I.N.S.,* 554 F.2d 17, at 19 n.1. (2d Cir. 1977); *Acevedo v. I.N.S.,* 538 F.2d 918 (2d Cir. 1976). The use of this court solely as a dilatory tactic to avoid paying a judgment is a serious breach of professional ethics. Cf. *Hib-*

*bert v. I.N.S., supra,* at 19 n.1; *In re Bithoney,* 486 F.2d 319 (1st Cir. 1973). See also Edelstein, The Ethics of Dilatory Motion Practice: Time for Change, 44 Fordham L.Rev. 1069 (1976). We remind the Bar that under Fed.R. Civ.P. 11 the signature of an attorney on a pleading "constitutes a certificate by him . . . that it is not interposed for delay." We will not countenance attempts to pervert the federal judicial process into a Dickensian court where lawsuits never end.