OPINION OF THE COURT
William C. Donnino, J.
Defendants Dante Caputo and Emily Caputo move for summary judgment in their favor and to dismiss the complaint and cross claims against them. Defendant Roadway Contracting opposes that motion and cross-moves for summary judgment and dismissal in its favor. Defendant Consolidated Edison (Con Ed) opposes the Caputos’ and Roadway’s motions and cross-moves for summary judgment and dismissal in its favor. Thus, three of the six sets of defendants move for summary judgment and dismissal.[1] The plaintiff opposes all the above motions and cross motions.
The Caputos’ motion is denied.
Roadway’s cross motion is granted.
Con Ed’s cross motion is granted.
Background
On November 24, 1997, plaintiff Eugenia Ostrovsky allegedly tripped and fell in the street abutting the residential building numbered 5288-5294 Sycamore Avenue, sustaining injuries. The plaintiff and her husband brought this action on the ground that her injuries were the result of the negligence of the above-captioned defendants.
*153 The action was commenced by a complaint filed on October 2, 1998, and supplemented by a supplemented complaint filed on August 18, 2000. The complaints allege that at 5:45 p.m. on November 24, 1997, the plaintiff “was caused to fall due to a dangerous and defective condition which existed” at “the sidewalk/shoulder/roadway at/adjacent to the 254th Street driveway for the premises known as 5288/5294 Sycamore Avenue Bronx, New York”; the bill of particulars narrows the location to “the roadway adjacent to” that driveway entrance. The complaints further allege that the City is the owner of the location where the plaintiff fell, that the Caputos own abutting premises at 5288 Sycamore Avenue, and that Stephen Hammer and Virginia Knox own abutting premises at 5294 Sycamore Avenue.
The complaints allege that, at some time before the incident, the Caputos, Hammer, and Knox contracted with Con Ed “to perform certain work, construction, installation, and/or repair” at the site of the plaintiffs fall, and with Alfredo Calvi and Sons, Inc. “for repair, replacement, construction, demolition, installation, excavation, modification and/or renovation” at that site. The complaints also allege that the “defendants” contracted with the City, and that Con Ed contracted with Roadway, in connection with the alleged work, and that such work was performed “prior to and up until” the plaintiffs fall. The complaints state that the work was done for the benefit of the Caputos and Hammer, and that the Caputos and Hammer made a “special use” of the area where the work was done.
The complaints do not allege whether or how the work done by or on behalf of the defendants caused the alleged defect, but they do allege that the plaintiffs injuries were caused by the defendants’ collective “carelessness, recklessness, and negligence.”
In responsive pleadings, the Caputos denied having any contractual relationships pertaining to construction at or near the location of the alleged fall, and they denied doing any such work themselves or having any knowledge of any dangerous condition. Con Ed and Roadway denied their own negligence and denied knowledge of any dangerous condition.
The following facts were elicited from the testimony taken at the depositions of the witnesses:
In 1997, nonmoving defendants Virginia Knox and Stephen Hammer (collectively Hammer) lived at 5294 Sycamore Avenue, at the corner of Sycamore and West 254th Street; moving *154 defendants Dante and Emily Caputo lived next door at 5288 Sycamore Avenue. Notwithstanding the Sycamore addresses, their homes shared a common driveway onto West 254th Street between Sycamore and Independence Avenues. Entering the driveway, Hammer’s house is the first one on the right and the Caputos’ house is second.
At some point before September 1997, the City repaved West 254th Street. The height of the new surface of the road, in comparison to the 5288-5294 Sycamore driveway, caused Hammer’s and the Caputos’ cars to hit the ground while entering the driveway. Hammer had on occasion discussed this problem with the Caputos. To address the problem, Hammer hired Alfredo Calvi and Son, Inc. to repave the lower portion of the driveway. The Caputos were aware that Hammer was having this work done. They did not participate in Hammer’s decision to do it, and they did not pay Hammer or Calvi, but, as Hammer put it, “I don’t recall them arguing with us. Both of us had cars that were bottoming out.” Hammer did not remember exactly when the work was done, but the photographs in evidence at the examination before trial (EBT) fairly and accurately depicted the area as it appeared after completion of the work.
During the course of the work on the driveway, Hammer asked Calvi to do whatever was necessary to prevent water runoff from up the hill from eroding the newly paved driveway.[2] Hammer did not tell Calvi how to do this, but he recalled that Calvi paved over some ground a few feet up the hill from the end of the driveway. This paving is visible just above the driveway in EBT exhibit Al.
In 1997, Robert O’Brien, a Con Ed dispatcher, was responsible for coordinating and maintaining records of contract jobs performed on Con Ed’s behalf on Bronx streets. Clemente Perrotta, a manager at Roadway, received job orders from Con Ed and visited all the job sites.
On September 18, 1997, Roadway began two excavations for Con Ed on the block of West 254th Street between Sycamore *155 and Independence Avenues, which is the block containing the 5288-5294 Sycamore driveway. Specifically, Roadway dug “test pits” about five feet deep into the street so that Con Ed could examine the area underneath the asphalt. The pits were filled in on October 1, 1997. Perrotta identified as a test pit the “black asphalt line” in EBT exhibit Al, near the 5288-5294 Sycamore driveway, which crosses most of the street but does not reach the edge of the street on the right side. O’Brien indicated that the cut had been 29 feet across by 4 feet wide. Roadway did no other work for Con Ed in that location.
On November 24, 1997, plaintiff Eugenia Ostrovsky was walking on West 254th Street near Sycamore Avenue. She walked on the right side of the road up the hill from Sycamore Avenue, past the driveway entrance to 5288 and 5294 Sycamore, toward Riverside Drive. After the plaintiff passed the driveway, she heard a bus coming from behind her and turned to her right to get out of the way.[3] At that point, the plaintiff fell and was injured when her left foot was caught “in a hole” on “the edge of the road” that was about six inches deep by three feet long. This occurred five to six feet beyond the driveway. The plaintiff stated that she “cannot [be] precise” as to the location, but she nonetheless circled the general area of her fall on EBT exhibits Al, C2, and C4 (all of which are included, along with other photographic exhibits from the EBT, in exhibit E in the appendix to the Caputos’ moving papers). The plaintiffs markings do not overlap or immediately abut Roadway’s “test pit” or the driveway. Also, the plaintiff noticed no apparent excavation or construction being performed at the time. The plaintiffs markings do, however, coincide with the area beyond the driveway where Calvi did the work to prevent water runoff.
Dante Caputo did not testify at an EBT. However, he filed with his moving papers an affidavit swearing that he had no contract with the City, Con Ed, Roadway, Calvi, or anyone else, that he had no involvement in any work that was done on the street, and that he made no special use of the street.[4]
*156 Discussion
The Caputos, Roadway, and Con Ed seek summary judgment in their own favor pursuant to CPLR 3212. The proponent of a motion for summary judgment carries the initial burden of production of evidence as well as the burden of persuasion. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) The moving party must tender sufficient evidence to demonstrate as a matter of law the absence of a material issue of fact. If that initial burden is satisfied, an opponent of the motion must then produce evidence in admissible form to establish the existence of a triable issue of fact. (Id.; see CPLR 3212 [b].) In determining a summary judgment motion, the court’s function is not to resolve disputed factual issues, but to determine whether such issues exist. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) Thus, where the existence of a factual issue is even arguable or debatable, summary judgment should be denied. (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978]; Stone v Goodson, 8 NY2d 8 [1960].) Nonetheless, a party may not defeat a motion for summary judgment with “bare allegations” of “unsubstantiated” facts. (Zuckerman v City of New York, 49 NY2d 557, 563-564 [1980]; Shaw v Time-Life Records, 38 NY2d 201, 207 [1975]; Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 63 [1959]; Plantamura v Penske Truck Leasing, 246 AD2d 347, 348 [1st Dept 1998] [“Mere conclusions, expressions of hope, allegations or assertions are insufficient”].)
Here, the EBT evidence, viewed in the best light for the plaintiff, established the following facts: Roadway and Con Ed completed some excavation in the middle of the street at some time before October 1, 1997. Also, at some unspecified time before November 1997, the City repaved the area of the street that abutted the driveway that Hammer shared with the Caputos. The City’s work created a problem with the relative levels of the street and the driveway, causing Hammer’s and the Caputos’ cars to “bottom out.” Hammer hired Calvi to fix this problem by resurfacing the boundary between the street and the driveway. The Caputos knew that Hammer had initiated this work but they were not at all involved in it. During the course of the driveway work, Hammer asked Calvi to proceed in a way that would reduce water runoff coming from up the hill. Calvi did so by extending the area of the work beyond the driveway, several feet into the street.
On November 24, 1997, a dangerous condition in the street caused the plaintiff to fall. According to the plaintiff’s own *157 markings on photographs in evidence at the depositions, she fell in the area where Calvi had worked on the street beyond the driveway — not on or in front of the driveway or in the area where Roadway and Con Ed had worked.
Roadway and Con Ed
On those facts, the action against Roadway and Con Ed cannot stand. There is no factual issue as to whether Roadway and Con Ed might have created the defect that allegedly caused the plaintiffs accident. The only evidence regarding Roadway and Con Ed’s work is that the work was limited to the “test pits” depicted in the photographs — an area that did not overlap with the area where the plaintiff claimed to have fallen. Furthermore, the plaintiff had indicated that she fell in a hole six inches deep by three feet long, while the uncontroverted evidence from Roadway and Con Ed was that the “test pit” nearest the plaintiffs fall was several feet deep and dozens of feet long— again, clearly not the same hole. Finally, the “test pit” work was finished and the pit filled in by October 1, 1997, while the plaintiff alleges that she fell in November of that year — another indication that the Roadway/Con Ed work is not relevant, as the photographs depict no hole in the filled pits. Since the plaintiff claims to have fallen in a general area that does not overlap with the Roadway/Con Ed work, in a hole of a different size than the test pit, at a time after the pit was filled, the work done by Roadway and Con Ed cannot possibly have caused the defect that allegedly caused the plaintiff’s accident. Thus, Roadway and Con Ed are entitled to summary judgment. (See Perriconi v St. John’s Preparatory High School, 290 AD2d 546, 546 [2d Dept 2002] [“Although there was evidence that the defendants repaired the sidewalk on the block where the plaintiff fell, they made a prima facie showing of their entitlement to judgment as a matter of law by relying upon the plaintiffs own deposition testimony that no repairs had been made in the area where the accident occurred”].)
In opposing Roadway and Con Ed’s motions, the plaintiff does not challenge their assertions as to the location or extent of their work. Instead, the plaintiff contends that she was not certain where she fell, and that Roadway and Con Ed could be responsible because the area that the plaintiff indicated on the exhibit was not far from the work done by Roadway and Con Ed. That argument must fail. The plaintiffs answer to the motion is, in light of her EBT and photographic markings of where she fell, unsupported speculation. A motion for summary judg *158 ment may not be defeated by a response “based upon surmise, conjecture and suspicion” (Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 63 [internal quotation marks omitted]). The evidence offered in support of summary judgment for Roadway and Con Ed affirmatively established that Roadway and Con Ed did not do any work where the plaintiff claimed to have fallen, and that the work they did do was completed and filled in before the plaintiff fell. The plaintiff cannot defeat their motions for summary judgment by speculating that she might have been mistaken in her EBT about where she fell.
Summary judgment in favor of the defendants Roadway and Con Ed on the question of liability is granted, and the action against those defendants is dismissed.
The Caputos
The Caputos are alleged to be liable for the plaintiffs injuries based on their alleged contracts with Con Ed and Alfredo Calvi with respect to the area where the plaintiff fell, but there is no factual issue concerning these theories. The Caputos have proffered sufficient evidence to the contrary, which is summarized above and remains uncontradicted by the plaintiff, namely, that they had no contract for or involvement with any construction at the site of the plaintiffs fall.
First, as noted, Roadway and Con Ed explained that they did work outside the area of the alleged fall, and in any event not in cooperation with the Caputos or for their benefit. And second, as for the hiring of Calvi to work on the driveway, Hammer explained that he did this on his own without the Caputos’ participation. Dante Caputo’s affidavit confirmed these facts. Because the only available evidence shows that the plaintiff fell on a City-owned street in an area where the Caputos did not do any work or cause any work to be done, the Caputos have shown that there is no factual issue with respect to their creation of the alleged defect. Absent some exception to the general rule that a landowner owes no duty to the public with respect to maintaining the street abutting his property (see, e.g., Otero v City of New York, 213 AD2d 339 [1st Dept 1995]), the Caputos would prevail on summary judgment.
There is, however, an exception to the above rule that is relevant in this case. A property owner may owe a duty to the public to maintain public property which the owner has put to a “special use” or which was constructed in a such a way as to confer upon the owner a “special benefit” unrelated to public use. (Kaufman v Silver, 90 NY2d 204 [1997]; D’Ambrosio v City *159 of New York, 55 NY2d 454 [1982]; see PJI3d 2:111 [2003].) Such a situation may be created by “the installation of some object in the sidewalk or street or some variance in the construction thereof.” (Spangel v City of New York, 285 AD2d 425, 425 [1st Dept 2001]; Balsam v Delma Eng’g Corp., 139 AD2d 292, 298 [1st Dept 1988].) The fact that the landowner did not himself create the “special use” is no defense so long as he knows about it, as the duty to maintain the area providing a special benefit runs with the ownership of the land that it benefits. (Granville v City of New York, 211 AD2d 195, 197 [1st Dept 1995]; Allen v Weiss, 279 App Div 91, 93 [3d Dept 1951, Bergan, J.] [special benefit “must have a special relationship to the use of the land and be thus apparent”].) Simply put, a landowner owes a duty with respect to a special use of public property when such use provides a known benefit to the landowner unrelated to its public use and the landowner has the ability to maintain it safely. (Kaufman v Silver, 90 NY2d at 207.)
The question whether a “special use” exists that confers a duty to maintain upon a landowner is usually a question of law (see 1 NY PJI3d 532 [2001]), and that is the case here. Calvi’s modifications to the driveway — and to the street to prevent erosion of his work on the driveway — clearly provided a “special benefit” with respect to the driveway co-owned by the Caputos and that benefit was known to the Caputos.
The construction benefitted the Caputos in a way unrelated to public use, by improving the driveway, and that construction included modifications to the street that were implemented for the express purpose of protecting the improved driveway. There is no question that the improved driveway benefitted the Caputos, and the scope of the single job that improved the driveway extended into the street. As Hammer testified, this was done not for some unrelated purpose, but as part of the driveway job. Indeed, Hammer expected that such work would be useful in protecting the driveway, and his testimony that the runoff could “affect[ ]” the Caputos’ “entry” demonstrated his recognition of the benefit the Caputos received from the work he was doing. The entire project was therefore of benefit to the Caputos, in a sense unrelated to public benefit.
The Caputos knew of this benefit. Of course, the Caputos did not order the work on the driveway and abutting public land, and they were not involved in Hammer’s discussion with the contractor about paving a few feet into the street to prevent runoff erosion of the work on the driveway. But the Caputos *160 knew that the contracting work was done and that it was done for Hammer’s and their own benefit. Extending the driveway into the street to prevent erosion from runoff was just a part of doing the job from which the Caputos received the same benefit as Hammer. The Caputos lived there before and after the work was done and used the driveway to enter and exit their property. They had to know what the driveway and abutting area looked like before and after the work was done, the effects of the severe runoff that Hammer described, and the difference with respect to the pavement (and, incidentally, the effects of erosion) before and after the work was done. In fact, they had been involved in discussions with Hammer about the problem with their driveway and, as Hammer aptly put it, were not “arguing with” his decision to fix their common problem which Calvi’s work “appeared to cure.”
Finally, inasmuch as Hammer was able to have the work done in that public area right next to the driveway, the Caputos had the same access and ability to maintain that area. In short, the Caputos owed the plaintiff a duty to maintain in a safe condition the area where work was done on the street for the Caputos’ benefit.
In light of the Caputos’ duty to maintain the portion of the public street put to use for their benefit, the following issue cannot be resolved against the plaintiff as a matter of law: Whether the Caputos are liable for the plaintiffs injuries based on their duty to maintain the modification to the street, i.e., the work done on the street to protect the driveway, from which they obtained a special benefit. (Cf. Rodriguez v Jones, 227 AD2d 220 [1st Dept 1996].)
Given the existence of a special use or benefit, there remain factual issues on the question of the Caputos’ liability. As the Pattern Jury Instruction on special use recognizes, the
“plaintiff must show that (1) a dangerous condition existed on the portion of the sidewalk put to defendant’s special use, (2) defendant either knew about or in the use of reasonable care should have discovered the condition and had a reasonable opportunity to correct it, and (3) the condition was a substantial factor in causing plaintiff’s injury.”
(PJI3d 2:111 [2003].)
There are triable issues as to whether a dangerous condition existed on the portion of the street put to the defendant’s special use, and as to whether such a condition was a substantial factor *161 in causing the alleged injury. And while it is clear that the Caputos knew of the benefit they received from the work to the driveway, there remains a triable issue as to the separate question of whether they knew (or had reason to know) of the dangerous condition. Since none of the three factual elements of liability for special use or benefit are resolvable on the record of the current summary judgment motion, a trial is warranted.
Accordingly, the Caputos’ motion for summary judgment is denied.

. Codefendants Virginia Knox and Stephen Hammer and the City of New York are not parties to these motions and cross motions.

. The runoff from up the hill on 254th Street was a “long-standing problem”; Hammer bemoaned “the speed and the volume of water that comes rushing down this hill.” Hammer feared erosion of the driveway work because the runoff “frequently undercuts any structures that are adjacent to the roadway.” Hammer had not previously discussed the runoff problem with the Caputos, as he had discussed the driveway, but he recognized that the runoff could be a problem “possibly affecting their entry” (via the driveway).

. Although not addressed in the plaintiffs testimony, the photograph reveals that the street has no sidewalks.

. Notwithstanding the plaintiff’s argument that the Caputos’ motion must be denied for failure to give EBT testimony, the affidavit of a party is properly considered in support of a summary judgment motion. (CPLR 3212 [b]; Miller v City of New York, 253 AD2d 394, 395-396 [1st Dept 1998].)