Jones, J.
We hold that official audit reports issued on behalf of the State Comptroller by the Division of Audit and Accounts are subject to an absolute privilege in any action for defamation based on the content of such reports.
With the Counties of Essex and Franklin as its two local sponsors, North Country Community College was established at Saranac Lake, New York, in 1967 pursuant to article 126 of the Education Law. In 1971 at the request of North Country, the State Comptroller’s office made an audit of the college pursuant to the authority of section 1 of article V of the New York State Constitution and section 8 of the State Finance Law. After comments by the college in response to the audit findings, the audit report was released to the press on March 27,1973.
The audit presented a wide-ranging review of the financial affairs of the college from its inception through fiscal 1970-1971. In commenting on the college’s use of outside consultants, reference was made to the engagement of a local computer service company (claimant) to maintain payroll records and to process all college payrolls. Costs of this service were detailed, and then, after a reference to the incompleteness of the figures available, there followed the statement of which plaintiff now complains: "Nevertheless we believe that *291 these costs are excessive for the services actually rendered and that the contracts should be terminated.”
Claimant thereupon filed a claim against the State charging defamation. The Appellate Division reversed the judgment claimant obtained in the Court of Claims and dismissed its claim. There should be an affirmance; we agree that the publication in question was subject to an absolute privilege.
We have recently had occasion to consider the history and the somewhat "checkered jurisprudential course” of the doctrine of absolute privilege in the law of defamation (Stukuls v State of New York, 42 NY2d 272 [decided herewith]). Note was taken there of the somewhat broader application of the doctrine to legislators and judges than to members of the executive branch of government. With respect to the latter category, the protective shield of absolute privilege has been raised uniformly only for officials of cabinet rank. In Stukuls we held that such privilege did not extend to communications of the acting president and vice-president of a local college unit of the State University of New York although he was acting in his official capacity.
Appellant argues that because the audit report in this instance, as would certainly be true of almost all such audit reports, was actually prepared by employees of the division rather than by the Comptroller himself, there should be but a qualified privilege. We reject this contention. The Comptroller is expressly authorized to assign examination and audit work to examiners appointed by him pursuant to law. Section 43 of the Executive Law provides in part:
"§ 43. Examiners
"1. Whenever the comptroller may deem it necessary to enable him to perform the duties imposed upon him by law with regard to the inspection, examination and audit of the fiscal affairs of the state or of the several officers, departments, institutions, public corporations or political subdivisions thereof, he may assign the work of such inspection, audit and examination to any examiner or examiners appointed by him pursuant to law.”
As a practical matter, such assistance and delegation obviously are unavoidable. To hold that a report prepared and signed by the Comptroller personally is subject to an absolute privilege, whereas one prepared under his supervision by examiners appointed by him for that purpose and released on *292 his responsibility is not so protected would be wholly to ignore the realities of the operation of State government. It has been held that the absolute privilege of the executive head of department extends to those of subordinate rank who exercise delegated powers (Barr v Matteo, 360 US 564; Lombardo v Stoke, 18 NY2d 394; Laurence Univ. v State of New York, 41 AD2d 463).
As a matter of principle, it appears to us that according an absolute privilege to the office of the Comptroller in connection with examinations and audits of State and municipal agencies is essential to the effective discharge of the responsibilities vested in the Comptroller by our State Constitution (art V, § 1). The public interest demands that there be no legal or practical constraint placed on the content of his reports or deterrent to their availability to public scrutiny (Spalding v Vilas, 161 US 483, 498). Statutory provision is made to assure the public access to the reports (General Municipal Law, § 35). If defamatory error be made in the preparation or writing of such reports a remedy lies in intradepartmental regulation and, if need be, employee discipline. That such remedy leaves an injured party unrecompensed and may not be wholly effectual is not of sufficient disadvantage to overbalance the public interest in open publication of uninhibited audit reports. We recognize the significant and peculiar impact, both therapeutic and preventative, which these reports play in the complexity and turbulence of governmental activities today. While we agree that the protection of an absolute privilege should be accorded but sparingly, it appears at least as important to shelter the official audit reports released by the Comptroller as the after-dinner remarks of the State Conservation Commissioner (see Cheatum v Wehle, 5 NY2d 585 [Dye, J.]).
We conclude, therefore, that the Comptroller and his subordinates by delegation had an absolute privilege with respect to the alleged libelous matter which appeared in the official audit report prepared in this instance. To the extent that the decision in Peeples v State of New York (179 Misc 272) may be read contrarily, it is disapproved.
In making the disposition which we do in this case, we note the significant distinction between actions of employees of executive departments of State government undertaken on their own behalf in the discharge of their own official duties (as in Stukuls) and actions (as here) performed by delegation *293 on behalf of the department head. In the former instances there is no absolute privilege; in the latter, there is.
Accordingly, the order of the Appellate Division should be affirmed, with costs.