*608 OPINION OF THE COURT
Stanley L. Sklar, J.
Three principal issues are presented. First, on the motion to dismiss or for summary judgment by the city and its Department of Consumer Affairs, is the cloak of absolute immunity that ordinarily covers the publication of a governmental report lost because a private newspaper and reporter allegedly participated in the investigation underlying the report? Second, on that same motion, if the absolute privilege is lost, are those defendants protected by qualified privilege? Third, can the cross motion for summary judgment on behalf of the New York Times and its reporter be considered when another Justice of this court previously denied a similar application by the same defendants?
 This court holds that the absolute privilege has been lost, but that the city and its department are nonetheless protected by a qualified privilege. Finally, this court cannot grant the summary judgment relief previously denied by another Justice.
THE FACTS
During the summer of 1978, the department conducted an undercover investigation of air-conditioner repair shops, pursuant to title A of chapter 64 of the Administrative Code of the City of New York. The New York Times purchased one of the air conditioners used in the investigation. As a result of the investigation, the department issued violations to several repair shops, including plaintiff, Freeze Right. On July 21, 1978 the department issued a formal press release announcing its analysis of the results of the investigation.
Ralph Blumenthal, a reporter, wrote an article which was published in the New York Times on July 5, 1978. According to the article, an air conditioner in perfect operating condition, but with one interior wire deliberately disconnected, was brought to Freeze Right for repair. Freeze Right told the investigator who brought the unit in that a new fan motor was needed. The bill specified “replace fan motor”. A postservice analysis by Irving Bachrach, an expert selected by the department, reported *609 that although the loose wire had been fixed, the fan motor had not been replaced; the original motor was still in the unit. In addition, the old motor returned by Freeze Right was not from the unit as claimed. Freeze Right’s manager, David Malina, insisted that the motor had been changed, and that the wrong motor was mistakenly returned. Malina claimed to have the original motor in the shop, but the serial number he cited did not match the one certified as the original.
After the violations against Freeze Right were issued by the department, Mr. Bachrach re-examined the unit and determined that a new motor had, in fact, been installed in the unit.
Freeze Right, its manager and owners then sued the defendants complaining that the New York Times “maliciously” published the article which contained “false, scandalous and defamatory matter”. Moreover, according to the complaint, the New York Times knew that the “defamatory matter” was false “or failed to take the proper steps to ascertain whether the matter was true or false”.
ABSOLUTE PRIVILEGE
The doctrine of absolute immunity or privilege protects governmental units and government officials from suits based on defamatory statements issued in the discharge of official duties. The rule allows governmental units and government officials to perform their duties without fear of lawsuits stemming from the discharge of those duties. (Stukuls v State of New York, 42 NY2d 272; Ward Telecommunications & Computer Servs. v State of New York, 42 NY2d 289.) Although this doctrine is the result of public policy considerations, “the privilege is not to be extended liberally, and instead must be carefully confined to that type of situation in which the protection provided by the privilege will serve a necessary societal function * * * Thus, even a public official who is otherwise entitled to immunity ‘may still be sued if the subject of the communication is unrelated to any matters within his competence * * * or if the form of the communication — e.g., a public statement — is totally unwarranted’ ” (Clark v McGee, 49 NY2d 613, 618).
*610 The department persuasively argues that if it had conducted the investigation on its own and then released its conclusions, the statements in the report would have been absolutely immune from suit. (Stukuls v State of New York, 42 NY2d 272, supra.) Plaintiffs, however, supported by information in the July 5 article and in the July 21 press release, argue that the investigation was conducted jointly by the New York Times and the department and that this participation dissolves the official nature of the investigation and hence the absolute immunity.
Their argument finds support in a recent Court of Appeals case. In Ward Telecommunications & Computer Servs. v State of New York (42 NY2d 289, supra), Ward claimed that the preparation of an audit report by employees of the Division of Audit and Accounts rather than by the Comptroller himself dissolves the absolute immunity. The court rejected that argument, holding that the Comptroller and his subordinates by delegation have an absolute immunity with respect to the official audit report prepared.
In the instant case, the New York Times and Ralph Blumenthal are clearly independent of the city and the department. They investigate, gather, and report news. The New York Times allegedly elected to purchase an air conditioner to aid it in its own investigative duties. It did not, by such purchase, assume any obligation to act as a representative or employee or agent of the city or the department. Clearly, neither the New York Times nor Blumenthal were subordinates of the department to whom the duty of investigating air-conditioning repair shops was delegated. Therefore, assuming the Times’ participation as claimed by plaintiffs, the results of the investigation are not absolutely privileged.
QUALIFIED PRIVILEGE
Although absolute immunity is not available to defendants, liability for defamation may be avoided by invoking the doctrine of qualified privilege. This doctrine allows one with a legal or moral duty to communicate to the public information about another, to do so provided that the information is released in performance of one’s duty and with the good-faith belief that the information is true. *611 (Shapiro v Health Ins. Plan of Greater N. Y., 7 NY2d 56.) The two criteria set out by Shapiro are met by defendants: (1) Included in the department’s duties is the obligation to investigate and inform the public of instances of consumer fraud. (Administrative Code, ch 64, tit A.) (2) The department released the information in reliance on its expert’s report. The fact that the expert subsequently reversed his report is irrelevant, for when the information was released the department had every reason to believe it was true. Plaintiffs have failed to come forward with any facts suggesting otherwise.
ACTUAL MALICE
For plaintiffs to defeat a qualified privilege and maintain an action for defamation, they must prove that defendants released the information with actual malice. (Andrews v Gardiner, 224 NY 440.) Malice, with respect to a qualified privilege, is not to be inferred from the falsity of the information but must be actually proven. (Stukuls v State of New York, 42 NY2d 272, supra.)
Here, plaintiffs failed to prove actual malice on the part of defendants. Rather, plaintiffs merely alleged malice by claiming, in a conclusory fashion, that defendants acted with a reckless disregard of the truth. Since plaintiffs have •not met their burden of raising a triable issue, of fact as to actual malice, the motion of the City of New York and the department for summary judgment is granted. (Roche v Hearst Corp., 53 NY2d 767; Rinaldi v Viking Penguin, 52 NY2d 422; Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369; Chapadeau v Utica Observer-Dispatch, 38 NY2d 196.)
PRIOR DENIAL OF MOTION FOR SUMMARY JUDGMENT
The cross motion of the New York Times and Blumenthal, for summary judgment, grounded both on section 74 of the New York Civil Rights Law, and constitutional privilege, is denied.
In February, 1980, another Justice of this court denied an earlier motion of the New York Times and Blumenthal for summary judgment. That motion was based on the same grounds as their current cross motion. That other Justice held that there were “issues of fact relating to the *612 role of movant in the investigation which must be resolved.”
While “[a] denial of a motion for summary judgment is not necessarily res judicata or law of the case” (Sackman-Gilliland Corp. v Senator Holding Corp., 43 AD2d 948, 949), “[m]ultiple summary judgment motions should be discouraged in the absence of a showing of newly discovered evidence or other sufficient cause (Graney Dev. Corp. v Taksen, 62 AD2d 1148,1149; Harding v Buchele, 59 AD2d 754; Abramoff v Federal Ins. Co., 48 AD2d 676; Powell v Trans-Auto Systems, 32 AD2d 650). Fragmented attacks upon a [pleading] through multiple summary judgment motions are not permissible.” (Marine Midland Bank v Fisher, 85 AD2d 905, 906.)
When, as in this case, the cross movants claim to have set forth additional facts which were or should have been within their knowledge at the time of the initial application, these facts do not constitute newly discovered evidence. (General Crushed Stone Co. v Central N. Y. Contr., 31 Misc 2d 440; cf. American Trading Co. v Fish, 87 Misc 2d 193 [involving a motion to renew].)
Moreover, a subsequent application for summary judgment brought before another Judge flies in the face of the policy set forth in CPLR 2221, which requires applications for reargument or renewal to be made to the original Judge. (Marine Midland Bank v Fisher, 85 AD2d 905, supra; Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, 1980-1981 Pocket Part, CPLR C3212:21, p 82.)
Accordingly, the cross motion for summary judgment by the New York Times and Blumenthal is denied.