PATRICK F. MAHONEY et al., Respondents-Appellants, v TEMPORARY COMMISSION OF INVESTIGATION OF THE STATE OF NEW YORK et al., Appellants-Respondents. (And Another Related Claim.) (Claim Nos. 70145, 73111.)

Third Department, February 14, 1991

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Michael S. Buskus* and *Peter H. Schiff* of counsel), for appellants-respondents.

*Stephen J. Waite* for respondents-appellants.

OPINION OF THE COURT

WEISS, J.

In 1982, the Temporary Commission of Investigation of the State of New York (hereinafter SIC) commenced an investigation into the alleged presence of organized crime and racketeering in the building industry. In 1983 the SIC, as a part of this investigation, began investigating the Multi-Town Solid Waste Management Authority.[1] In November 1984 the SIC published and released a report of its findings and recommendations, entitled "Multi-Town Solid Waste Management Authority and the Crisis of Solid Waste Management" (hereinafter the Multi-Town report), and in December 1985 it published and released its report with conclusions and recommendations of its investigation of the building and construction industry (hereinafter the Building Industry report).

Claimant Patrick F. Mahoney is an engineer and claimant Smith & Mahoney, P. C. is an engineering firm, both of which were investigated and prominently mentioned in both the Multi-Town and Building Industry reports. Alleging they were improperly subjected to intensive scrutiny and improper releases of information, claimants filed two claims, one relating to the Multi-Town report and certain activity surrounding that report (hereinafter the Multi-Town claim) and the other relating to the Building Industry report and activity ostensibly relevant thereto (hereinafter the Building Industry claim). In essence, the claims allege that Thomas Staffa, the SIC's chief counsel, and other SIC employees injured claimants by deliberately and without just cause engaging in a course of conduct designed to harass, defame and injure claimants, particularly their business reputation and livelihood. Among the acts alleged are the issuance of reports with defamatory statements, repeatedly reinvestigating the same records of claimants without cause or justification, and communicating deliberately misleading and incorrect information to claimants' prospective clients which falsely implied wrongdoing and involvement with trash haulers on Long Island and with politicians and politics generally in Albany County.

After service of the answer, the State moved to dismiss the

1. The Multi-Town Solid Waste Management Authority was established to cope with the waste landfill problems confronting the Towns of Babylon, Huntington and Islip in Suffolk County.

Building Industry claim on the grounds that (1) the court lacks jurisdiction over any party other than the State, (2) the claim fails to state a cause of action, and (3) the claim has no merit. The State also moved to dismiss the Multi-Town claim on the grounds that (1) the court lacks jurisdiction over any party other than the State, (2) the court lacks jurisdiction over any part of the claim accruing before August 15, 1984, that date being 90 days before the claim was served and filed, (3) the claim fails to state a cause of action, (4) the claim for libel, slander or defamation fails to state the particular words complained of, and (5) the claim has no merit.[2]

The Court of Claims dismissed so much of the Building Industry claim as alleged conspiracy and denied those parts of the motion which sought dismissal of the defamation claim, finding that the SIC did not have absolute immunity, and conditioned denial upon claimants supplementing their claim by setting forth their special damages. With respect to the Multi-Town claim, the court granted dismissal of the claims based upon libel, slander, defamation, abuse of process, malicious prosecution and conspiracy, but denied dismissal based on untimeliness. The court further denied dismissal of the cause of action for tortious interference with contractual relationships and denied dismissal of the cause of action for prima facie tort, unless claimants failed to serve a supplemental claim within 30 days setting forth their special damages. Both claimants and the State have appealed.

■ The State first contends that the SIC is entitled to an absolute immunity from common-law tort liability, arguing that the subject conduct was discretionary and within the outer perimeter of job duties. By Court of Claims Act § 8, the State waived its sovereign immunity and assumed liability for its conduct in accordance with the same rules of law applicable to individuals and corporations *(Florence v Goldberg,* 44 NY2d 189, 194-195). At the same time, the State retained its immunity in several areas *(see, Arteaga v State of New York,* 72 NY2d 212 [State employee actions constituting discretionary conduct of a quasi-judicial nature under the authority of and in full compliance with statutes and regulations]; *Stukuls v State of New York,* 42 NY2d 272 [defamation by high ranking governmental executives in the course of their duties]; *Weiss v Fote,* 7 NY2d 579, 587 ["exercise of expert

---

2. The record reflects that the actions have been amended to designate the State of New York as the sole party defendant.

judgment in the course of government planning for the public safety"]). The State seeks to have us broaden the absolute immunity doctrine so as to embrace under its protective umbrella the SIC's investigatory duties and reporting. We decline to do so.

While police-like investigations are uniquely governmental in nature, New York has not expanded absolute immunity to the police *(see, Jones v State of New York,* 33 NY2d 275, 279-280; *see also, Arteaga v State of New York, supra,* at 217, n 1). More recently, the Court of Appeals has specifically determined that absolute immunity does not apply to all discretionary government acts *(Tarter v State of New York,* 68 NY2d 511, 518-519). The activities of the SIC are generally investigatory in nature, and while for a different purpose, are essentially similar to those of a police force. Certainly, the alleged chilling effect of potential liability for tortious conduct by SIC employees would be no greater than that applicable to police conduct. The duties of the SIC are not impartial quasi-judicial functions *(see, supra,* at 518-519).

■ The State has woven into the fabric of its argument a separate line of absolute immunity in cases involving defamation. The general rule, as expressed in *Stukuls v State of New York* (42 NY2d 272, *supra), Ward Telecommunications & Computer Servs. v State of New York* (42 NY2d 289) and *Cheatum v Wehle* (5 NY2d 585), provides that a principal executive of State or local government and those entrusted by law with considerable administrative or executive policymaking responsibilities are entitled to absolute immunity from defamation claims emanating from official reports and communications. "[T]he privilege is not to be extended liberally, and instead must be carefully confined to that type of situation in which the protection provided by the privilege will serve a necessary societal function" *(Clark v McGee,* 49 NY2d 613, 618), and the privilege applies only to high officials bearing the greatest burden of government *(supra,* at 619). Because the SIC is only an investigatory body without adjudicative or policymaking functions and, significantly, only a temporary commission, we conclude that this narrow immunity is inapplicable.

■ The State next contends that a cause of action for tortious interference with contractual relations cannot be applied to SIC actions, arguing that this claim can only be brought against actual or potential competitors. We find no such limitation *(see, Mansour v Abrams,* 144 AD2d 905; *Man-*

*delblatt v Devon Stores,* 132 AD2d 162, 169; *see also, Murtha v Yonkers Child Care Assn.,* 45 NY2d 913, 915; *Kartiganer Assocs. v Town of New Windsor,* 108 AD2d 898, 899, *appeal dismissed* 65 NY2d 925). Claimants have alleged that SIC employees told prospective clients not to do business with them which certainly would support an allegation of malice *(see, Mandelblatt v Devon Stores, supra)* and serves to obviate the contention.

■ The next argument raised by the State is that the claim for prima facie tort failed to state a cause of action and must be dismissed because claimants will be unable to prove that the SIC had no legitimate basis for its action, i.e., that it was guilty of "disinterested malevolence" *(American Bank & Trust Co. v Federal Bank,* 256 US 350, 358; *accord, Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314, 333). Initially, we observe that claimants have alleged the requisite elements of a prima facie tort action: (1) the infliction of intentional harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts which are otherwise lawful *(see, Freihofer v Hearst Corp.,* 65 NY2d 135, 142-143). This tort "is designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy" *(Curiano v Suozzi,* 63 NY2d 113, 118). While an explanation can always be advanced for one's conduct, the excuse or justification must be one which the law recognizes and involves a weighing of the public's gain against the harm to another *(ATI, Inc. v Ruder & Finn,* 42 NY2d 454, 459). The record reflects adequate support for a finding that 3 of the 4 elements of this tort are present: the infliction of intentional harm, by acts that would otherwise be lawful, resulting in damage. The justification advanced by the State is that the investigations and reports of the SIC were the result of appropriate governmental and public interest in the two topics reviewed. While a legitimate excuse may develop for the specific investigations and the relevant parts of the reports, this argument ignores the fact that the justification may not excuse the specific acts of misconduct alleged to have been committed by SIC employees under the guise of governmental and public interests. As difficult as claimants' proof may be, the fact remains that a claim has been sufficiently set forth, provided claimants adequately replead their special damages.

The State further contends that the defamation cause of action associated with the Building Industry claim should

have been dismissed because the derogatory remarks, if taken as a whole, are not susceptible of a defamatory connotation. In the first instance, a court must determine whether the reasons given for ascribing a defamatory meaning to a publication have a reasonable basis *(Silsdorf v Levine,* 59 NY2d 8, 12, *cert denied* 464 US 831; *James v Gannett Co.,* 40 NY2d 415, 419). Claimants point to references made in appendix C of the Building Industry report accusing them of contract favoritism in the City of Albany and stating that their contracts with the city created, at a minimum, the appearance of impropriety. They are accused of infusing the selection process with political, personal or other illegitimate considerations which demonstrate a profound indifference to the public interest in sound government. These statements followed earlier references which express concern for contractor fraud, public corruption and mismanagement with reference to claimants' contracts. The Building Industry report then states "Contractors have devised many ingenious schemes to enrich themselves at the public's expense." Also, the Building Industry report contains references connecting claimants to individuals and businesses involved with organized crime and cross-referencing the matter to the Multi-Town report where similar negative associations are set forth.

■ By construing the reports as a whole and taking them in the context of the actions by SIC employees, the Court of Claims was correct in finding that the remarks could readily be viewed as defamatory *(see, Tracy v Newsday, Inc.,* 5 NY2d 134, 137; *James v Gannett Co., supra,* at 420). The other SIC conduct alleged to be malicious includes releasing excerpts of the reports to the media and telling employees of the Cities of Albany and Troy and employees of Saratoga County not to do business with claimants, which all lends contextual support and buttresses claimants' charges that defamatory meaning should be ascribed to the words. In sum, we find a cause of action for defamation has been adequately stated.

■ We find equally unavailing the last contention made by the State that the causes of action arising out of the October 1984 Multi-Town report should be limited to conduct which occurred within the 90-day period prior to filing the November 13, 1984 claim. The Court of Claims found the wrongs to be of a continuing nature and so interrelated that they could not be separated for purposes of applying time limitations. We agree. A continuous course of conduct extends the accrual period of a claim until such conduct terminates *(Brown v State of New*

*York,* 125 AD2d 750, 751-752). Here, acts of the SIC alleged to be wrongful were all a part of the investigation which ended with the issuance of the report. The damages here resulting from the individual acts could not be effectively ascertained and evaluated until the report was released *(see, Otis Elevator Co. v State of New York,* 52 AD2d 380, 382; *Waterman v State of New York,* 19 AD2d 264, 266, *affd* 17 NY2d 613).

■ Claimants in their cross appeal contend that dismissal of their defamation claim in the Multi-Town claim was improper. We cannot agree. CPLR 3016 (a) requires that "the particular words complained of shall be set forth in the complaint". Claimant has failed to do this, even to the date of the motion by the State some 3½ years after the claim was filed. While denial of the motion on this ground pending further discovery might have been appropriate at an earlier stage in the action *(see, Ramsay v Mary Imogene Bassett Hosp.,* 113 AD2d 149, 152-153, *lv dismissed* 67 NY2d 608), here, dismissal was correct. The only words complained of available to the court for review were those contained in the Multi-Town report which was supplied to the court with this motion. However, as the Court of Claims found, those portions advanced by claimants as being defamatory were too generalized and vague, particularly when read within the context of the entire report, to be susceptible of a defamatory connotation *(see, James v Gannett Co.,* 40 NY2d 415, *supra).*

MAHONEY, P. J., CASEY, CREW III and HARVEY, JJ., concur.

Order affirmed, without costs.