OPINION OF THE COURT
George B. Ceresia, Jr., J.
The above-captioned action arises out of a controversy involving the right to membership in the Benevolent and Protective Order of Elks of the United States (Elks), and specifically, defendant Guilderland Lodge, No. 2480, B.P.O.E. (Guilderland Lodge). The structure of the Elks organization includes local clubs or “lodges”, such as the defendant Guilderland Lodge. There is a State organization, the New York State Elks Association, and a national governing body, referred to as the Grand Lodge.
Prior to September 29, 1995, to be eligible for membership in the Elks an applicant had to be, inter alia, a male citizen of the United States of America. On September 29, 1995 the Grand Lodge amended its constitution to permit women to be eligible for membership. The change in criteria for membership was applicable to all Elk Lodges including the defendant Guilder-land Lodge. It is alleged that at the July 9, 1995 national convention plaintiff advised certain members of the Guilder-land Lodge that she would like to be the first woman to seek admission as a member. It is alleged that in response, William Cook, Exalted Ruler of the Guilderland Lodge, expressed his displeasure and requested that she wait until after his term as Exalted Ruler had expired before applying for membership. On December 27, 1995 plaintiff submitted her application for membership to the Guilderland Lodge. She allegedly met all of the requirements for membership. On January 29, 1996 plaintiff and her sponsor appeared before the investigating committee. The investigating committee found that plaintiff met all of the criteria for membership. On February 5, 1996 the investigating committee made its report to Lodge members that the plaintiff and two other applicants met all of the criteria for membership and proposed them for a vote at the next meeting. The vote was held on February 19, 1996. It is alleged that certain members, officers and trustees attempted to “pack” the hall with Lodge members who would vote against plaintiff because she was a woman. Initially all three applicants were considered on one ballot. The initial vote was allegedly interrupted and set aside by reason of procedural irregularities. A second vote was taken, again with all candidates on a single *710 ballot. All three membership applications were denied. A third vote was taken, at which time each of the membership applications was voted on separately. As a result of the third vote, the two male members were accepted for membership and the plaintiffs application was rejected by a vote of 57 to 6.
Plaintiff commenced the instant action on a complaint alleging six causes of action: a cause of action under Executive Law § 296 (2) (a) alleging that defendants, in the course of denying plaintiff membership in the Guilderland Lodge, had conspired to discriminate against her by reason of her sex or gender; a cause of action under Executive Law § 296 (2) (a) and § 297 (9) against Guilderland Lodge, an alleged place of public accommodation, based on the alleged denial to plaintiff of its accommodations, advantages, facilities and/or privileges by reason of plaintiffs gender; a cause of action under the Executive Law on grounds that defendants aided, abetted, incited, compelled and coerced the Guilderland Lodge to deny plaintiff accommodations, facilities and privileges of membership of the Guilderland Lodge by reason of plaintiffs gender; a cause of action arising from a violation of the constitution, statutes, by-laws and regulations of the Grand Lodge as amended on September 29, 1995; a cause of action in prima facie tort; and a cause of action in either intentional and/or negligent infliction of emotional distress. Plaintiff seeks certain declaratory relief, an order compelling Guilderland Elks to accept plaintiff as a member, and $10,000,000 in compensatory and punitive damages.
Defendants have asserted a number of affirmative defenses, including the following: that defendants are exempt from the provisions of Executive Law § 296; that plaintiff lacks standing; that plaintiffs fifth and sixth causes of action are legally or factually deficient.
The defendants have made a motion to dismiss plaintiffs complaint pursuant to CPLR 3211 (a) (7) and 3212. Plaintiff opposes the motion.
Turning to the merits of the action, under Executive Law § 296 (2) (a) it is an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, etc., of any place of public accommodation to refuse, withhold from, or deny any person, directly or indirectly, the accommodations, advantages, facilities or privileges thereof because of, inter alia, her or his gender. Executive Law § 292 (9) defines the term “place of public accommodation” and recites: “Such term shall not include * * * any institution, club *711 or place of accommodation which proves that it is in its nature distinctly private * * * For the purposes of this section, a corporation incorporated under the benevolent orders law or described in the benevolent orders law * * * shall be deemed to be in its nature distinctly private”. As defendants point out, the Elks are identified as a benevolent order in section 2 (10) of the Benevolent Orders Law.*
Plaintiff nonetheless argues that defendants have not satisfied their burden of proof that the Guilderland Lodge is not a place of public accommodation. In support of this argument, plaintiff places emphasis upon many of the functions and events which are held at the Guilderland Lodge that are open to the public. Plaintiff points out that the Guilderland Lodge serves as host to private parties and weddings (attended by nonmembers). Plaintiff also indicates that nonmembers present on the Guilderland Lodge premises are often extended such membership privileges as ordering drinks from the bar.
The court is mindful that under Executive Law § 300 the provisions of article 15 of the Executive Law “shall be construed liberally for the accomplishment of the purposes thereof’ (Executive Law § 300; see, Matter of Cahill v Rosa, 89 NY2d 14 [1996]). The court is also mindful that, ordinarily, an organization must carry its burden of demonstrating (through the tender of sufficient evidence) that it is exempt from the application of the provisions of the Human Rights Law by reason that it falls within the category of being “distinctly private” (see, Matter of Cahill v Rosa, supra, at 22-23; D’Amico v Commodities Exch., 235 AD2d 313 [1st Dept 1997]). Nonetheless, the court cannot ignore the mandate of Executive Law § 292 (9) that a benevolent order “be deemed to be in its nature distinctly private” (emphasis supplied). This mandate, in the court’s view, clearly eliminates all necessity of proof by Guilderland Lodge in establishing its initial burden on the motion for summary judgment.
Plaintiff’s uncontroverted evidentiary submissions demonstrate that the Guilderland Lodge may indeed host a number of functions open to the public. However, in view of the underlying acts complained of by plaintiff, such a showing is not germane and thus creates no triable issue of fact. The purpose, in the court’s view, of the special protection afforded benevolent orders under Executive Law § 292 (9) is to provide a shield *712 in connection with the conduct of their internal affairs, including membership. Such a shield would not apply to its public functions. For instance, were the Guilderland Elks to engage in a discriminatory practice in the conduct of one of its public functions (such as denying a woman entry to the Lodge, solely by reason of her gender), the protective provisions of Executive Law § 292 (9) would not apply.
Since the plaintiff’s complaint refers only to acts or omissions of the Guilderland Lodge relative to her application for membership, the court finds that pursuant to Executive Law § 292 (9) Guilderland Lodge is not a place of public accommodation and therefore in this instance Executive Law § 296 (2) (a) has no application to the defendants. There being no violation of Executive Law § 296 (2) (a), none of the defendants could be found to have aided, abetted, incited or coerced a violation of such section; and there could be no conspiracy to violate the section. The court concludes that the relief sought in plaintiff’s first, second and third causes of action must be denied.
With respect to plaintiff’s fourth cause of action (that defendants have violated the constitution, statutes, by-laws and regulations of the Grand Lodge, as amended on Sept. 29, 1995), defendants maintain that plaintiff does not have standing to assert such a violation and/or that plaintiff’s allegations fail to state a cause of action. In the court’s view, plaintiff falls within the class of persons intended to be protected through enactment by the Grand Lodge of the amendment to the Elks constitution on September 29, 1995. Plaintiff possesses the right to submit a membership application to a local lodge with the expectation that the application will be processed and acted upon in accordance with the constitution, by-laws and rules. Failure to adhere to proper procedure would give rise to a cause of action by an eligible individual to require her candidacy for membership to be entertained and considered in accordance with proper procedure. Moreover, it would not be lawful for a lodge to go through the hollow formality of causing a prospective female member’s application to be brought up for a vote if the membership in fact had determined to vote against the applicant solely because of her gender. The consequence of such a circumstance would be to render such individual ineligible for membership by reason of her gender, in direct contravention of the Elks constitution. Taking all of plaintiff’s allegations to be true (as the court must on the instant motion for summary judgment), the court finds that as to defendant Guilderland *713 Lodge and its officers and trustees there is a triable issue of fact with respect to whether the voting process in the instant situation violated the constitution of the Grand Lodge.
With respect to all the other parties (the Grand Lodge, the New York State Elks Association, William H. Smith, individually and as President of New York State Elks Association, Benevolent and Protective Order of Elks of United States of America, Grand Lodge and Edward J. Mahan, individually and as Grand Exalted Ruler of the Grand Lodge) the court finds that plaintiffs fourth cause of action must be dismissed. Said defendants have tendered evidence in admissible form sufficient to establish, prima facie, that they had no involvement with the act of the Guilderland Lodge in denying plaintiff membership. Plaintiff has failed to adduce evidentiary proof in admissible form to create a triable issue of fact. The general supervisory powers possessed by these organizations over the Guilderland Lodge are clearly insufficient to result in liability.
Turning to plaintiff’s fifth cause of action, prima facie tort, it is well established that to support a cause of action based upon prima facie tort plaintiff must allege (1) the infliction of intentional harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts which are otherwise lawful (see, Mahoney v Temporary Commn. of Investigation, 165 AD2d 233, 239; see also, Freihofer v Hearst Corp., 65 NY2d 135, 142-143). While prima facie tort may be pleaded in the alternative with a traditional tort, once a traditional tort is established the cause of action for prima facie tort disappears (Board of Educ. v Farmingdale Classroom Teachers Assn., 38 NY2d 397, 406).
In this instance, it is evident that one of the essential elements to a cause of action for prima facie tort, special damages, is missing, having neither been pleaded nor proven. A general allegation of damage in a stated amount is not sufficient (see, 36 NY Jur 2d, Damages, § 188, at 318). There must be a showing of reasonable, identifiable, specific and measurable losses suffered by plaintiff (see, Bassim v Howlett, 191 AD2d 760, 761-762 [3d Dept 1993]; Constant v Hallmark Cards, 172 AD2d 641, 642 [2d Dept 1991]; 103 NY Jur 2d, Torts, § 22, at 425-427). A demand for a round sum, such as $1 million, is insufficient (see, 103 NY Jur 2d, Torts, § 22, at 425-427). In the absence of special damages, the court finds that plaintiffs fifth cause of action must be dismissed.
With respect to plaintiffs sixth cause of action, the elements of a cause of action in intentional infliction of emotional *714 distress include (1) extreme and outrageous conduct; (2) an intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; (4) severe emotional distress (Howell v New York Post Co., 81 NY2d 115, 121 [1993]). The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community (see, Murphy v American Home Prods. Corp., 58 NY2d 293 [held: no cause of action for intentional infliction of emotional distress even where plaintiff alleged he was wrongfully terminated from his employment: (1) in retaliation for disclosing accounting improprieties; and (2) by reason of his refusal to participate in the alleged improprieties]; see also, Howell v New York Post Co., supra [newspaper not liable for intentional infliction of emotional distress where it published recognizable photograph of plaintiff within psychiatric facility, where plaintiff did not want it publicly known that she was undergoing psychiatric treatment]; DeFilippo v Xerox Corp., 223 AD2d 846, 847, 848 [3d Dept 1996] [held: no cause of action for intentional infliction of emotional distress even where plaintiff contended that he was subjected to harassment by his supervisor at his place of employment]; compare, Stram v Farrell, 223 AD2d 260 [3d Dept 1996] [held: jury could rationally find that defendant’s conduct was extreme and outrageous in that he engaged in a deliberate and malicious campaign of harassment and intimidation directed towards plaintiffs (including screaming vile obscenities at plaintiff and his young daughters; threatening them with physical harm, including sexual threats directed at plaintiff’s daughters)]). In the court’s view plaintiff’s sixth cause, of action is deficient in that plaintiff has not demonstrated that the conduct and tactics complained of (which, if true would certainly, in the court’s judgment, be deemed anachronistic and morally reprehensible) were so outrageous and so extreme as to go beyond all possible bounds of decency and/or be deemed utterly intolerable in a civilized community as that concept has been defined in precedential law. Moreover, plaintiff’s motion submissions are not sufficient to create a triable issue of fact that she suffered severe emotional distress and/or that there is a causal connection between whatever emotional injuries she does suffer and the conduct complained of. The affidavit of plaintiff’s psychologist which states that plaintiff began treatment on March 16, 1998 is conclusory in that it gives a diagno *715 sis but no factual basis for the diagnosis and does not specifically relate the cause of such injury.
The court notes that “[ajlthough New York now recognizes a cause of action for direct negligent infliction of mental distress (see, Battalla v State of New York, 10 NY2d 237), there can be no recovery absent a sufficient guarantee of the genuineness of the claim, invariably requiring some competent evidence of contemporaneous or consequential physical harm” (Iannotti v City of Amsterdam, 225 AD2d 990 [3d Dept 1996], citing Johnson v State of New York, 37 NY2d 378, 381; Battalla v State of New York, supra; Conway v Brooklyn Union Gas Co., 189 AD2d 851; Lancellotti v Howard, 155 AD2d 588, 590; Ordway v County of Suffolk, 154 Misc 2d 269, 271-272). There is no claim of, or indication of, contemporaneous or consequential physical harm to plaintiff. Under the facts presented there is simply no merit to a cause of action for negligent infliction of emotional distress.
In summary, with respect to plaintiffs first three causes of action the court concludes that it must find and declare that defendants have not violated Executive Law § 296 (2) (a); and/or that the defendants have not conspired to, aided, or abetted such a violation. The court further finds that plaintiff has standing to assert a cause of action for a declaratory judgment that the Guilderland Lodge, its officers and trustees, violated the constitution, by-laws, rules and regulations of the Grand Lodge in denying her membership by reason of her gender. The court finds that there is a triable issue of fact which precludes the grant of summary judgment with regard to this cause of action. Lastly, the court finds that plaintiffs fifth and sixth causes of action in prima facie tort and intentional and negligent infliction of emotional distress must be dismissed.

 Benevolent Orders Law § 2 (10) recites: “Any lodge of the Benevolent and Protective Order of Elks duly chartered by and installed according to the regulations of that organization”.